ARKANSAS HIGHWAY AND TRANSPORTATION
DEPARTMENT and Public Employee Claims Division *v.*
Danny McWILLIAMS and Second Injury Fund

CA 92-381                                      846 S.W.2d 670

Court of Appeals of Arkansas
Division I
Opinion delivered February 10, 1993

2

*Maria L. Schenetzke, Frank GoBell*, and *Robert L. Wilson*, for appellant.

*Lavender, Rochelle, Barnette & Dickerson*, by: *Charles D. Barnette*, for appellee Danny McWilliams.

*Phillip T. Whiteaker*, for appellee Second Injury Fund.

JOHN MAUZY PITTMAN, Judge. The Arkansas Highway and Transportation Department and Public Employee Claims Division, appellants, appeal from an order of the Arkansas Workers' Compensation Commission. The Commission found that the appellee/claimant's pre-existing impairment did not combine with his work-related injury to produce his current disability status, but rather that the claimant's current disability status was solely the result of his compensable injury, and that the appellee Second Injury Fund had no liability in this case. In addition, the Commission found claimant's healing period ended September 8, 1988. The primary issue is whether payment to the claimant should be solely from the appellants or from the appellants and the Second Injury Fund. We find no error and affirm.

Appellants first contend that there is no substantial evidence to support the Commission's finding that the claimant's current disability status is solely the result of his compensable injury. We do not agree.

When reviewing decisions from the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission. We must uphold those findings unless there is no substantial evidence to support them. *Clark* v. *Peabody Testing Service*, 265 Ark. 489, 579 S.W.2d 360 (1979). The issue is not whether we might have reached a different result

or whether the evidence would have supported a contrary finding; if reasonable minds could reach the Commission's conclusion, we must affirm its decision. *Id.*; *Welch's Laundry and Cleaners* v. *Clark*, 38 Ark. App. 223, 832 S.W.2d 283 (1992).

In order for the Second Injury Fund to have liability, three prerequisites must be met: (1) the employee must have suffered a compensable injury at his present place of employment; (2) prior to that injury, the employee must have had a permanent partial disability or impairment; and (3) the disability or impairment must combine with the recent compensable injury to produce the current disability status. *Mid-State Construction Co.* v. *Second Injury Fund*, 295 Ark. 1, 746 S.W.2d 539 (1988); Ark. Code Ann. § 11-9-525(b)(3) (1987). If the more recent injury alone would have caused the claimant's current disability status, the Second Injury Fund has no liability. In other words, the prior condition must combine with the compensable injury "to produce a disability greater than that which 'would have resulted from the last injury, considered alone and of itself.' " *Id.* at 9, 746 S.W.2d at 543 (quoting Ark. Code Ann. § 11-9-525(b)(3)).

All parties agree that the claimant is now permanently and totally disabled and that he experienced a pre-existing non-work-related impairment to his back. As a child, he contracted spinal meningitis. Although he sustained a back strain in junior high school, he continued to play football through his senior year of high school. In 1980, he injured his lower back while playing softball. As his back condition worsened, he went to Dr. Thomas Fletcher for a diagnostic test which revealed a congenital fusion at the L4-5 level, a herniated disc at L5-S1 on the right, and degenerative disc disease at L3-4. On October 4, 1985, Dr. Fletcher performed a lumbar interlaminar laminotomy with bilateral L5-S1 discectomy decompression of conjoined L5-S1 right nerve root for the ruptured disc. On December 5, 1985, Dr. Fletcher released the claimant to return to work with instructions to avoid heavy lifting or bending. Dr. Fletcher noted that the surgery was successful and that the claimant made a good recovery. The claimant returned to an active life and was able to participate in hunting, fishing, camping, and water skiing. From the summer of 1986 through the date of his compensable injury on November 12, 1987, claimant routinely performed heavy manual labor and on occasion worked sixty-hour weeks.

As stated, claimant sustained a compensable injury in November 1987 while working for appellant Arkansas Highway and Transportation Department. He continued working until he went to Dr. Fletcher on December 29, 1987. On March 9, 1988, Dr. Fletcher performed a lumbar interlaminar laminotomy with bilateral L4-5 discectomy and exploration at L5-S1. Dr. Fletcher noted some adhesion at L5-S1 that required no intervention. He placed substantial restrictions on the claimant's activities and approved only sedentary work or work requiring very light activity. Claimant obtained no relief after the 1988 surgery. On June 21, 1988, Dr. Fletcher assigned a ten-percent permanent impairment for the compensable injury and for the first time gave a ten-percent rating for the prior back problem. The compensable injury rating was subsequently increased by Dr. Jim Moore to eighteen percent.

Since his 1987 injury, claimant has undergone considerable medical treatment by a number of specialists. In October 1989, Dr. Moore performed a myelogram, which reflected arachnoiditis. Dr. Moore indicated that this condition was found at L4-5 and L5-S1 levels and was related to the compensable injury. It is important to note that the March 1988 surgery performed by Dr. Fletcher involved a discectomy at L4-5 and an exploration at L5-S1. Thereafter, claimant saw Dr. Richard Guyer about the possibility of installing a dorsal column stimulator. Dr. Guyer referred to Dr. Ralph Rashbaum, who determined that the claimant was not a candidate for the procedure but that he might require fusion surgery at L3-4. Dr. Rashbaum stated the L5-S1 level did not seem to be painful at this time. Subsequently, claimant saw a urologist for chronic bladder problems that developed after the 1988 surgery. The record establishes that this treatment continued until April 8, 1991.

From our review of the record, we conclude that there is substantial evidence to support the Commission's finding that the claimant's current disability is a result of his compensable injury on November 12, 1987. The claimant did not experience severe pain until after his compensable injury. Dr. Rashbaum stated that the L5-S1 level was not causing pain prior to the compensable injury. Dr. Moore stated that the claimant's problems stemmed from his compensable injury. The 1985 surgical treatment of the L5-S1 disc protrusion was successful according to all

consulting doctors. There was evidence that the L-5 nerve root discomfort was related to the 1987 injury. Dr. Moore's X-ray notes from May 1989 revealed the existence of fusion related to the prior impairment, but indicated that the fusion was not significantly impairing the claimant's range of motion. The medical records indicate that the L5-S1 scarring and adhesions were mild before 1987. After the 1988 surgery, only minimal adhesion was found at L5-S1, but scarring from L4-5, L5-S1 was significant enough to cause claimant's problems regarding his range of motion. The arachnoiditis at L4-5, L5-S1 was attributed to the compensable injury. In sum, we conclude that there was evidence from which the Commission could reasonably conclude that the Second Injury Fund had no liability in this case.

■ Appellants next contend that the Commission erred, as a matter of law, in considering the claimant's physical abilities and/or lack of disabilities prior to the work-related injury in determining whether his prior impairment combined with the work-related injury to produce the claimant's current disability status. Appellants note that the supreme court held in *Mid-State Construction Co.* v. *Second Injury Fund, supra*, that to constitute an "impairment" (the existence of which forms the second prerequisite to Second Injury Fund liability), it is not necessary that the prior condition have resulted in actual disability, or wage-earning loss. Appellants then argue that the Commission nevertheless required proof that the earlier injury or impairment resulted in some disability before it would find that the prior impairment and the work-related injury had combined to produce the claimant's current disability status. In other words, appellants argue, the Commission has made prior wage-earning loss a prerequisite to Fund liability by " 'read[ing] into' the third prong of the test the very condition which the court in *Mid-State Construction* stated was not required." Appellants contend that the Commission's decision has the effect of rendering the holding of *Mid-State Construction Co.* void.

Unlike appellants, we do not read the Commission's opinion to require as a prerequisite to Fund liability proof that a claimant's prior impairment was disabling or causing wage-earning loss. The Commission refers to and recites the supreme court's holding in *Mid-State Construction Co.* The Commission clearly acknowledges its understanding that a prior condition

need not cause a loss of wage-earning capacity in order to constitute an "impairment" and thereby meet the second prong of the test for Fund liability.

■ Nor do we read the Commission's opinion to make prior wage-earning loss a prerequisite to finding that an impairment and work-related injury have "combined" to produce one's level of disability, the third prong of the test. The Commission did refer in its opinion to the claimant's physical abilities and his lack of physical problems subsequent to his prior back impairment but before his compensable injury. However, we cannot conclude that the Commission made the lack of prior "disability" a determining factor, and we do not think that the extent of one's physical abilities prior to a compensable injury is necessarily irrelevant in every case, or in this case, to the decision whether the third prong of the test has been met.

Appellee/claimant Danny McWilliams has cross-appealed from that portion of the Commission's decision determining the end of his healing period to be September 8, 1988. He argues that there was no evidence to support the Commission's finding. McWilliams argues that the healing period ended on April 8, 1991, the date Dr. George Hunter, a urologist, indicated that claimant's chronic bladder problems that developed after the 1988 surgery had stabilized. In the alternative, claimant argues that the healing period ended on January 18, 1991, the date Dr. Guyer rated claimant's permanent physical impairment.

■■ The healing period is that period for healing of the injury which continues until the employee is as far restored as the permanent character of the injury will permit. If the underlying condition causing the disability has become more stable and if nothing further in the way of treatment will improve that condition, the healing period has ended. The healing period has not ended so long as treatment is administered for the healing and alleviation of the condition. *J. A. Riggs Tractor Co.* v. *Etzkorn*, 30 Ark. App. 200, 785 S.W.2d 51 (1990); *Mad Butcher, Inc.* v. *Parker*, 4 Ark. App. 124, 628 S.W.2d 582 (1982). The determination of when the healing period has ended is a factual determination that is to be made by the Commission, and if that determination is supported by substantial evidence, it must be affirmed. *Mad Butcher, Inc.* v. *Parker, supra.*

Here, the Commission determined that the claimant's healing period ended on September 8, 1988. Dr. Norris Knight, in a December 19, 1988, letter to claimant's attorney, stated that the claimant was permanently and totally disabled and "it is not expected that the patient will improve any significant amount in the future." Drs. Fletcher and Moore both opined that the healing period would extend for six months from the date of the surgery, ending in early September 1988. There was also evidence in the record from which the Commission could conclude that claimant's bladder problems did not contribute to the claimant's disability. Despite subsequent evaluation and treatment, claimant's underlying back condition had stabilized. We find no error.

Affirmed.

JENNINGS, C.J., and MAYFIELD, J., agree.