HAWKINS CONSTRUCTION v. Richard MAXELL and
Second Injury Fund

CA 94-1378                                           915 S.W.2d 302

Court of Appeals of Arkansas
En Banc
Opinion delivered February 21, 1996

*Bethell, Callaway, Robertson, Beasley & Cowan*, by: *John R. Beasley*, for appellant.

*Thompson & Llewellyn, P.A.*, by: *James M. Llewellyn, Jr.*, for appellees.

MELVIN MAYFIELD, Judge. Hawkins Construction Company has appealed a decision of the Worker's Compensation Commission which affirmed the administrative law judge's decision and adopted his findings of fact and conclusions of law. The law judge held appellant liable for appellee's medical expenses, temporary total disability from January 11, 1993, through June 27, 1993, permanent partial disability of 10 percent to the body as a whole, and wage loss benefits of 10 percent. The law judge

also found that the Second Injury Fund was not liable for the wage loss disability because all of appellee's permanent disability was the result of the last injury alone.

Richard Maxell, the appellee, testified that he was 27 years old, had a tenth-grade education, and had done manual labor all his working years. He said he received his first back injury in November 1990 while working at a service station at Waldron, Arkansas. He said he bent over to pick up a split-rimmed tire to pull the wheel out and "slipped something" in his back. He worked for another week before going to the doctor. He was then seen by two orthopedic surgeons who took turns coming to Waldron to see patients. Their diagnosis was a slipped disc, and he was treated with physical therapy. He filed a workers' compensation claim, but his employer did not have enough employees to be covered by the Act.

Maxell then went to work doing carpentry for American Construction. He said they did remodeling and there was some bending and lifting involved. However, it was not very heavy and he did not have any trouble with his back. After approximately nine months he was laid off.

A couple of months later Maxell went to work for appellant. He said his back did not bother him again until November of 1992 when he was doing iron work while building a school. He was lifting an I-beam and felt a "real sharp" pain in his lower back and into his legs. It hurt worse than his previous injury but he was able to continue working until sometime in January 1993, when he was on a roof attempting to prize a bundle of tin out of his way and the prize pole broke. This caused him to slip and he almost fell off of the roof but caught himself. He said that incident made his back a whole lot worse.

Maxell went to the doctor the next day after this injury. The doctor gave him muscle relaxers and pain pills and took him off work. When Maxell returned to the doctor two weeks later he was referred to a surgeon. Surgery was performed on March 24, 1993, and Maxell had a normal recovery. However, he testified that he had been unable to work since the surgery because of the doctor's restriction on bending and lifting.

Maxell also testified that he was in a head-on automobile

collision in July 1993. He was going about 35 miles an hour on a country road when he entered a curve. An oncoming car was over in his lane and hit him head-on. Maxell said he had his seat-belt fastened, and the accident only made him sore.

Maxell admitted that since his surgery he had done some deer hunting but that he has never hunted turkey, before or after the surgery. He also said he has no dogs and does not buy dog food; he had operated a backhoe a few times but not for money; and he does not operate a bush-hog.

On appeal the points relied upon are set out as follows:

I. Did Maxell suffer a compensable injury while working for Hawkins?

II. If Maxell suffered a compensable injury while working for Hawkins, is the Second Injury Fund responsible for wage loss disability benefits?

III. If Maxell suffered a compensable injury while working for Hawkins, is Hawkins responsible for all the claimant's permanent impairment rating?

■ When reviewing a decision of the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission and affirm that decision if it is supported by substantial evidence. *Clark* v. *Peabody Testing Service*, 265 Ark 489, 579 S.W.2d 360 (1979). The weight and credibility of the evidence is exclusively within the province of the Commission. *Morrow* v. *Mulberry Lumber*, 5 Ark. App. 260, 635 S.W.2d 283 (1982). The issue is not whether we might have reached a different result or whether the evidence would have supported a contrary finding; if reasonable minds could reach the Commission's conclusion, we must affirm its decision. *Bearden Lumber Co.* v. *Bond*, 7 Ark. App. 65, 644 S.W.2d 321 (1983). Even if a preponderance of the evidence might indicate a contrary result, we will affirm if reasonable minds could reach the conclusion of the Commission. *Henson* v. *Club Products*, 22 Ark. App. 136, 736 S.W.2d 290 (1987).

■ Appellant's first argument is that any injuries which occurred while working for appellant amounted to a recurrence

of the injury he received in 1990 while working at the service station. However, the Commission found that the injuries sustained while working for appellant amounted to an aggravation—not a recurrence. In *Pinkston* v. *General Tire & Rubber Co.*, 30 Ark. App. 46, 782 S.W.2d 375 (1990), we reviewed the distinction between a recurrence of a previous injury and an aggravation. We stated:

> In *Bearden Lumber Co.* v. *Bond*, 7 Ark. App. 65, 644 S.W.2d 321 (1983), this court considered the distinction between a recurrence and an aggravation in the context of which of two compensation carriers, if either, had liability. We concluded:
>
>> [I]n all of our cases in which a second period of medical complications follows an acknowledged compensable injury we have applied the test set forth in *Williams* [*Aluminum Co. of America* v. *Williams*, 232 Ark. 216, 335 S.W.2d 315 (1960)] — that where the second complication is found to be a natural and probable result of the first injury, the employer remains liable. Only where it is found that the second episode has resulted from an independent intervening cause is that liability affected.
>
> 30 Ark. App. at 50, 782 S.W.2d at 377. *See also Curry* v. *Franklin Electric*, 32 Ark. App. 168, 798 S.W.2d 130 (1990). In the instant case, following the law as explained in *Bearden Lumber Co.* v. *Bond, supra*, appellant would be liable for the aggravation of the old injury, and we think there is clearly substantial evidence to support the Commission's finding to that effect.

But appellant then argues that if Maxell did suffer a new injury, or an aggravation of his old injury, the Second Injury Fund is liable for his wage-loss disability. The law controlling this second point is found in *Mid-State Construction Co.* v. *Second Injury Fund*, 295 Ark. 1, 746 S.W.2d 539 (1988), where the Arkansas Supreme Court stated:

> It is clear that liability of the Fund comes into question only after three hurdles have been overcome. First, the employee must have suffered a compensable injury at his

present place of employment. Second, prior to that injury the employee must have had a permanent partial disability or impairment. Third, the disability or impairment must have combined with the recent compensable injury to produce the current disability status.

295 Ark. at 5, 746 S.W.2d at 539. In *Arkansas Transportation Department* v. *McWilliams*, 41 Ark. App. 1, 846 S.W.2d 670 (1993), we summarized the prerequisites that *Mid-State* said were necessary for Second Injury Fund liability as follows:

> In order for the Second Injury Fund to have liability, three prerequisites must be met: (1) the employee must have suffered a compensable injury at his present place of employment; (2) prior to that injury, the employee must have had a permanent partial disability or impairment; and (3) the disability or impairment must combine with the recent compensable injury to produce the current disability status. *Mid-State Construction Co.* v. *Second Injury Fund*, 295 Ark. 1, 746 S.W.2d 539 (1988); Ark. Code Ann. § 11-9-525(b)(3) (1987). If the more recent injury alone would have caused the claimant's current disability status, the Second Injury Fund has no liability. In other words, the prior condition must combine with the compensable injury "to produce a disability greater than that which 'would have resulted from the last injury, considered alone and of itself.'" *Id.* at 9, 746 S.W.2d at 543 (quoting Ark. Code Ann. § 11-9-525(b)(3)).

41 Ark. App. at 4, 846 S.W.2d at 672.

In the *McWilliams* case, the Commission found that the claimant's pre-existing impairment did not combine with his most recent injury to produce his current disability status, and we said there was substantial evidence to support that holding. Also in the instant case, the Commission found that Maxell's pre-existing disability or impairment and his most recent injury did not combine to produce a greater disability than would have been caused by the last injury when considered alone. As previously noted, we do not reverse the findings of fact made by the Commission if they are supported by substantial evidence, and the Commission determines the weight of the evidence and the credibility of the witnesses.

■■ We think there is substantial evidence to support the Commission's finding in this case. Dr. Michael Standefer, the Fort Smith neurosurgeon who performed Maxell's 1993 surgery, testified by deposition that he had compared the radiographic studies conducted in 1991 and the studies done in 1993. He found the disc protrusion in both studies to be in the same location, and he said the disc material he removed in the 1993 surgery was the same material that was extruded by the November 1990 injury. He said that the permanent impairment of Maxell, based on the March 12, 1991, MR scan, would be 7 percent. The doctor also testified, based upon the history he was given, that since Maxell had made a nice recovery from his 1990 injury and had gone back to work, "apparently something" happened on his job with the appellant Hawkins that resulted in the need of surgery. And he stated that "as a result of his recent surgery, his permanent impairment rating is felt to be 10%." The doctor also said that he had no indication that Maxell had any significant back problem in the past, other than back pain, and he "would not have anticipated a high likelihood" of Maxell's developing a surgical problem. The impairment rating given by a doctor is, of course, merely an aid to the Commission which has the duty of translating the testimony into findings of fact. *See Bearden Lumber Co. v. Bond, supra,* 7 Ark. App. at 74, 644 S.W.2d at 326. *See also Harris Cattle Co. v. Parker,* 256 Ark. 166, 506 S.W.2d 118 (1974), where the Arkansas Supreme Court explained that medical evidence is not essential in every workers' compensation case and that the Commission has the right to draw a reasonable inference from all the evidence before it.

■ There is evidence here that although Maxell sustained an injury in 1990, he had no surgery, he returned to the work force doing manual labor, and he had no problem doing his work until his injury more than two years later while working for the appellant. Under a similar situation, we said:

> However, the Commission found that the appellant's fall from the staircase was so severe that it alone would be sufficient to produce the appellant's permanent and total disability status. In light of the evidence that the appellant obtained excellent results from his prior surgeries and was able to return to work without limitations following them,

we cannot say that the Commission erred in so finding. *Bussell* v. *Georgia-Pacific Corp.*, 48 Ark. App. 131, 135, 891 S.W.2d 75, 77 (1995). We do not think the Commission erred in the case at bar.

█ Appellant's third point is that it should not be liable for all of Maxell's permanent-impairment rating. Appellant suggests under this point that Maxell's disability benefits should be apportioned by letting it pay only 3 percent of the amount due — leaving the other 7 percent unpaid and uncollectible. The case relied upon, *Aetna Insurance Co.* v. *Dunlap*, 16 Ark. App. 51, 696 S.W.2d 771 (1985), and the cases cited by it, reveal that the concept of apportionment applies to the cumulative effect of successive injuries in the same employment covered by two or more insurance carriers or to the cumulative effect of injuries suffered in the employment of two or more employers. Even if the apportionment rule has application here, the Commission has found that the effect of the injury which occurred while Maxell was employed by the appellant caused all of his disability. In *Tri State Ins. Co.* v. *Employer's Mutual Liability Ins. Co.*, 254 Ark. 944, 955, 497 S.W.2d 39, 46 (1973), the court said that under our workers' compensation law the issue of apportionment is a matter for factual determination by the Commission. As we have indicated, we think there is substantial evidence to support the Commission's decision in this case.

Affirmed.

JENNINGS, C.J., and ROGERS, J., agree.

PITTMAN and ROBBINS, JJ., dissent.

BULLION, Special Judge, dissents.

COOPER, J., not participating.

JOHN MAUZY PITTMAN, Judge, dissenting. I dissent from that part of the prevailing opinion that affirms the Commission's decision that the Second Injury Fund bears no liability in this case. In my judgment, the Commission's opinion, as well as that of the prevailing judges, flies in the face of the Arkansas Supreme Court's decision in *Mid-State Construction Co.* v. *Second Injury Fund*, 295 Ark. 1, 746 S.W.2d 539 (1988).

In order for the Second Injury Fund to have liability, three prerequisites must be met: (1) the employee must have suffered a compensable injury at his present place of employment; (2) prior to that injury, the employee must have had a permanent partial disability *or impairment*; and (3) the disability *or impairment* must have combined with the recent compensable injury to produce the current disability status. *Mid-State Construction Co.* v. *Second Injury Fund, supra*; Ark. Code Ann. § 11-9-525(b)(3) (1987). Here, the Commission determined that the appellant employer successfully established the first two prongs of the above test. However, the Commission concluded that the third prong had not been established because the claimant returned to work without restrictions after the 1990 injury that initially caused his disc protrusion; the claimant's condition was apparently asymptomatic prior to the 1992 on-the-job injury; and surgery did not become necessary until after the last injury. In effect, then, the Commission held that it would not find that a prior impairment and a work-related injury had combined to produce one's current disability status unless and until there was proof that the pre-existing impairment, alone, had resulted in some disability. This was wrong.

In *Mid-State Construction Co., supra*, the supreme court went to great lengths to correct an error that was consistently being made by the court of appeals. Several decisions of this court had held that, to meet the second prong of the test to determine Second Injury Fund liability, a claimant's pre-existing condition must have involved a loss of earning capacity. In *Mid-State Construction Co.*, the supreme court overruled those cases so holding. The court pointed out that the term "disability" is, in fact, defined to involve a loss of earning capacity. However, the court very clearly held that a prior "impairment" need not have been causing any loss of earning capacity.

Where, as here, the Commission denies relief on grounds that the party with the burden of proof has failed to sustain that burden, we should affirm under the substantial evidence standard of review only if the Commission's opinion displays a substantial basis for the denial of relief. *See Bussell* v. *Georgia-Pacific Corp.*, 48 Ark. App. 131, 891 S.W.2d 75 (1995); *Marcoe* v. *Bell International*, 48 Ark. App. 33, 888 S.W.2d 663 (1994); *Bryan* v. *Best Western/Coachman's Inn*, 47 Ark. App. 75, 885

S.W.2d 28 (1994). The only bases stated by the Commission for the denial of relief to the employer in this case revolve around the claimant's ability to work without surgery or restrictions after the 1990 injury and the fact that he was relatively asymptomatic until the 1992 work-related injury. By focusing exclusively on the claimant's physical abilities and/or lack of disabilities prior to the 1992 injury, the Commission has effectively made prior loss of earning capacity a prerequisite to Fund liability. In other words, the Commission has read into the third prong of the test and made determinative the very condition that the supreme court in *Mid-State Construction Co.* stated was not required. This would have the effect of rendering the holding in *Mid-State Construction Co.* void.

ROBBINS, J., and BULLION, Special Judge, join in this dissent.