Michael David LUTEN  *v.*
XPRESS BOATS & BACKTRACK TRAILERS
and Wausau Underwriters

CA 08-31                                                   285 S.W.3d 710

Court of Appeals of Arkansas
Opinion delivered June 18, 2008

*Lane, Muse, Arman & Pullen*, by: *Shannon Muse Carroll*, for appellant.

*Michael E. Ryburn*, for appellees.

SARAH J. HEFFLEY, Judge. Appellant appeals the Commission's order that reversed the order of the administrative law judge (ALJ) and found that appellant had failed to prove that he is entitled to additional temporary total disability benefits. On appeal, appellant contends that the Commission's opinion is not supported by substantial evidence; that the Commission mischaracterized critical evidence; and that the Commission unlawfully required appellant to prove the continuation of his healing period with objective evidence. We agree that there is a lack of substantial evidence to support the Commission's decision; therefore, we reverse and remand.

Appellant sustained an admittedly compensable back injury on August 16, 2004, while attempting to load a boat onto a trailer. Appellant was examined by his family physician, Dr. Robert Daniels, on August 18, 2004. An MRI performed on August 20, 2004, revealed diffuse degenerative changes throughout appellant's lumbar spine and a foraminal disc herniation at L5–S1. Appellant had no history of prior back problems or back injuries.

On October 1, 2004, appellant was examined by Dr. Michael Atta, appellees' company physician, whose examination revealed tenderness along the left paralumbar musculature with mild muscle spasms noted. Dr. Atta assessed appellant's condition as low back pain with L5–S1 herniated nucleus pulposus and referred appellant to Dr. James Arthur for a neurosurgical evaluation "to determine further management of his current condition." Dr. Atta also ordered that appellant be kept off work due to the narcotic medications he was taking.

On October 13, 2004, appellant was seen by Dr. James Arthur, a neurosurgeon. In his report of that visit, Dr. Arthur noted that appellant had "diminished range of motion in the lumbar spine with paraspinous muscle spasm" and was suffering from a "fairly significant lumbar strain injury." Dr. Arthur recommended a lumbar epidural steroid injection and a rehabilitative exercise program prior to appellant returning to work.

Appellant was next seen by Dr. Bruce Smith, an orthopedic surgeon, on October 25, 2004. Dr. Smith noted that appellant had some tenderness in the left paralumbar area and some subjective radicular symptoms into the left leg. Dr. Smith also acknowledged that the lumbar MRI showed a disc bulge at L5-S1, but stated that "it is really on the right inconsistent with his present clinical findings." Dr. Smith recommended a lumbar epidural steroid injection and physical therapy. He also stated that appellant remained unable to return to work.

Appellant underwent a lumbar spine epidural steroid injection on October 26, 2004, and followed up with Dr. Smith on November 3, 2004. Dr. Smith noted that appellant was "basically unchanged" since the epidural steroid injection and was still complaining of pain in the left paralumbar area. Dr. Smith concluded that appellant had suffered a lumbar strain, which was "resolving," and that there was "nothing surgical" about appellant's condition. On November 12, 2004, Dr. Smith released appellant from his care and to full work duty as of November 3, 2004.

Appellant did not return to work and was seen by Dr. Ron Williams, a neurosurgeon, on December 7, 2004. Dr. Williams ordered a repeat MRI of appellant's lumbar spine, and this MRI showed multilevel degenerative disc disease and a combination of diffuse bulge and spur at the L2-3 and L4-5 levels. After evaluating these MRI findings, Dr. Williams opined that while most of appellant's pain was on his left, he (Dr. Williams) did not think it was very significant, and there was nothing surgically to be done for appellant. Dr. Williams ordered a second epidural steroid injection and a work evaluation "to see if it is safe for [appellant] to return to work."

Appellant underwent a functional capacity evaluation on January 18, 2005. The evaluator found that appellant "put forth inconsistent effort and demonstrates inconsistencies with inappropriate illness responses." The evaluator concluded that appellant

could perform work at the "light" physical demand classification. After the evaluation, appellant returned to Dr. Williams on February 1, 2005, and Dr. Williams noted appellant was still having trouble with his left hip. Dr. Williams recommended a repeat MRI of the back and an MRI of the left hip. After these MRIs were performed, Dr. Williams noted a paralabral cyst on appellant's left hip and referred appellant to Dr. William Hefley, an orthopedic surgeon.

Appellant saw Dr. Hefley on April 6, 2005. After examining appellant and the MRIs, Dr. Hefley opined that appellant was suffering "discogenic lumbar pain with referred pain into the left lower extremity" and that appellant's symptoms were not "really reflective of hip pathology." Dr. Hefley recommended a course of aggressive and well-coordinated lumbar rehabilitation and physical therapy, and he noted that appellant had not had any physical therapy or rehabilitation made available to him in the seven and a half months since his injury. Dr. Hefley also recommended that appellant see a pain management specialist.

Pursuant to Dr. Hefley's suggestion, Dr. Williams arranged for appellant to receive physical therapy three times a week for six weeks, a total of eighteen sessions. However, only five of these sessions were approved by appellant's insurance carrier. After these sessions, appellant again saw Dr. Williams, who noted that appellant's back pain had improved but his hip pain had not. On June 15, 2005, Dr. Williams advised appellant to remain off work until further notice.

On July 10, 2005, appellant was seen by Dr. Barry Baskin for an independent medical evaluation at the appellees' request. Dr. Baskin opined that appellant's pain was coming primarily from his back and not from his hip, but he noted that there was "still some question as to what this gentleman's actual pain producer is." Dr. Baskin recommended a myelogram and a post-myelogram CT to assist in defining the source of appellant's pain. Dr. Baskin also stated that appellant had not received adequate physical therapy with only five sessions, and he recommended that appellant undergo a work-hardening program with more extensive physical therapy and reconditioning.

Dr. Williams referred appellant to Dr. Robert Kleinhenz, an orthopedic surgeon, to have the myelogram and post-myelogram CT performed; however, Dr. Kleinhenz discontinued his orthopedic practice and the tests were not performed. On August 22,

2005, Dr. Williams opined, in response to a letter from appellant's insurance carrier, that he did not know if appellant had reached maximum medical improvement and that appellant's injury would produce a five percent whole person impairment based on the AMA guidelines.

A hearing was held on February 16, 2006, before the ALJ to determine appellant's entitlement to additional temporary total disability benefits. Appellees contended that appellant was not entitled to additional temporary total disability benefits because he had reached the end of his healing period on November 4, 2004, after Dr. Smith released him to return to full duty. In his opinion, the ALJ found:

> The record here shows that the claimant's incapacitating symptoms have continued to require medical care, although the respondents have not always provided the reasonably necessary testing and physical therapy recommended by the claimant's treating physicians, not to mention their own second opinion doctor. . . . [T]he record tends to show that the claimant has continued in his healing period and has been incapacitated to earn wages. Even Dr. Baskin indicated that the claimant needed a work-hardening program to assist him back into the workforce.

The ALJ held that appellant was entitled to temporary total disability benefits from November 4, 2004, when his benefits were terminated, until a date to be determined.

The Commission reversed the ALJ in an opinion filed December 12, 2006. The Commission stated that appellant's history showed that "each time the claimant was released with regard to his low back, he would redirect his complaints to his hip," but appellant had never been diagnosed with a compensable hip injury. The Commission also stated that "the claimant's lumbar spine condition, which has been found to be the source of the claimant's continuing complaints of pain, is degenerative in nature and does not require surgical intervention." The Commission declared that the medical evidence did not corroborate appellant's alleged inability to function either at home or in employment and concluded that appellant had "failed to prove by objective medical findings that his physical condition has worsened since his release by Dr. Smith in November of 2004."

Appellant appealed to the Court of Appeals, and in an opinion delivered October 3, 2007, this court reversed and remanded due to the unclear basis of the Commission's findings and

conclusions. This court noted that, although a claimant must offer objective medical evidence to prove the existence of an injury, objective medical evidence to show that his healing period continues is not required. Because it was unclear to this court whether the Commission believed that the lack of objective medical evidence to show continuance of the healing period was of itself fatal to appellant's claim, we remanded the case for the Commission to clarify the basis for its decision.

In response, the Commission filed an opinion on November 27, 2007, tracking the language in its first opinion verbatim except for the omission of the paragraph discussing the lack of objective medical findings and the addition of the following paragraph:

> In conclusion, the claimant has failed to prove by a preponderance of the evidence that he remained within his healing period and totally incapacitated from earning wages since his release by Dr. Smith in November of 2004. The credible evidence presented in this claim simply does not corroborate the claimant's self-serving testimony regarding his alleged inability to function. In short, the preponderance of the evidence demonstrates that the claimant sustained a severe lumbar strain on August 16, 2004, and regardless of the claimant's personal beliefs as to whether he is currently disabled as a result of that strain, the evidence does not support a finding that the claimant is, or has been totally incapacitated from earning wages since November of 2004, when he was released by Dr. Smith.

Appellant now brings his appeal to this court once again.

On appeal, appellant argues that the Commission erred in finding that his healing period had ended on November 4, 2004. In determining the sufficiency of the evidence to support the findings of the Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings, and we will affirm if those findings are supported by substantial evidence. *Farmers Coop. v. Biles*, 77 Ark. App. 1, 69 S.W.3d 899 (2002). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* The issue is not whether this court might have reached a different result from that reached by the Commission, or whether the evidence would have supported a contrary finding. *Smith v. County Market/Southeast Foods*, 73 Ark. App. 333, 44 S.W.3d 737 (2001). We will not reverse the Commission's decision unless we are convinced that fair-minded persons with

the same facts before them could not have reached the conclusions arrived at by the Commission. *Id.*

When an injured employee is totally incapacitated from earning wages and remains in his healing period, he is entitled to temporary total disability. *Searcy Indus. Laundry, Inc. v. Ferren*, 92 Ark. App. 65, 211 S.W.3d 11 (2005). The healing period ends when the employee is as far restored as the permanent nature of his injury will permit, and if the underlying condition causing the disability has become stable and if nothing in the way of treatment will improve that condition, the healing period has ended. *Id.* Conversely, the healing period has not ended so long as treatment is administered for the healing and alleviation of the condition. *Breakfield v. In & Out, Inc.*, 79 Ark. App. 402, 88 S.W.3d 861 (2002). The determination of when the healing period has ended is a factual determination for the Commission and will be affirmed on appeal if supported by substantial evidence. *Searcy, supra.*

Appellant argues that in this case, no less than five physicians have recommended or requested that he undergo physical therapy, but this treatment has not been adequately provided to him. In addition, there are diagnostic tests, namely the myelogram and post-myelogram CT recommended by appellees' own medical examiner, which have been requested but not yet performed. Appellant contends that as long as this care and treatment continues to be recommended but not completed, his healing period has not ended.

We agree with appellant that the findings that appellant's healing period ended on November 4, 2004, and that appellant was not totally incapacitated from earning wages since his release by Dr. Smith, are not supported by substantial evidence. As stated previously, a claimant's healing period has not ended so long as treatment is administered for the healing and alleviation of the condition. *Breakfield, supra.* In this case, there is treatment, most prominently physical therapy, which has been recommended by a number of appellant's treating physicians and would be administered for the healing and alleviation of appellant's condition, but appellees have refused to authorize such treatment. Appellees cannot now rely on that refusal to assert that appellant is receiving no treatment to heal and alleviate his condition.

Regarding the release to full work duty issued by Dr. Smith, we note that Dr. Smith did so after appellant had received only one epidural steroid injection and had not received any physical

therapy, even though Dr. Smith himself had recommended appellant undergo physical therapy. We also note that Dr. Smith was one of several physicians treating appellant, therefore the fact that Dr. Smith saw nothing in appellant's condition that required surgery and released appellant from his care does not necessarily mean that appellant was in fact fully recovered and able to return to work. *See Dallas County Hosp. v. Daniels*, 74 Ark. App. 177, 47 S.W.3d 283 (2001) (upholding Commission's finding that claimant remained in her healing period when only one of several treating physicians found that claimant had reached maximum medical improvement).

In addition, none of appellant's treating physicians, including Dr. Smith, has ever opined that appellant has reached maximum medical improvement. *Cf. Ark. Highway and Transp. Dep't v. McWilliams*, 41 Ark. App. 1, 846 S.W.2d 670 (1993) (upholding Commission's determination that claimant's healing period had ended when treating physician opined that claimant was not expected to improve in any significant amount in the future). Indeed, Drs. Arthur, Smith, Hefley, Williams, and Baskin all appear to believe that intensive physical therapy would improve appellant's condition and allow him to return to work.

In conclusion, we hold that substantial evidence does not support the findings of the Commission and we therefore reverse the Commission's decision and remand for an appropriate award of temporary total disability benefits from November 4, 2004 to a date to be determined. *See Amaya v. Newberry's 3N Mill*, 102 Ark. App. 119, 282 S.W.3d 269 (2008) (reversing Commission's determination that claimant's healing period had ended when physician who stated claimant had reached maximum medical improvement also stated claimant should receive injections for his back and workers' compensation should pay for the treatment); *Southeast Arkansas Farmers Ass'n v. Walton*, 267 Ark. 1118, 597 S.W.2d 603 (Ark. App. 1980) (upholding determination that healing period did not end when treating physician had indicated claimant could return to work but further treatment would be required).

Reversed and remanded.

HART and BAKER, JJ., agree.