2010 Ark. App. 204

**HUGHES SCHOOL DISTRICT and Risk Management Resources, Appellants.**

v.

**Peggy BAIN, Second Injury Fund, and Death & Permanent Total Disability Trust Fund, Appellees.**

No. CA 09–1023.

Court of Appeals of Arkansas.

March 3, 2010.

Melissa Faye Wood, Worley, Wood & Parrish, P.A., Little Rock, for appellants.

David Lawrence Pake, Matthew Keith Wren, Little Rock, for appellees.

LARRY D. VAUGHT, Chief Judge.

Appellant Hughes School District (District) appeals the decision of the Arkansas Workers' Compensation Commission finding that appellee Peggy Bain was entitled to temporary-total-disability benefits from September 10, 2002, to May 11, 2006. The District contends that there is a lack of substantial evidence supporting the decision. Bain cross-appeals, arguing that the Commission's decision that she failed to prove that she was permanently and totally disabled was not supported by substantial evidence. We affirm the direct appeal and the cross-appeal.

In March 2001, Bain was employed as a teacher at Hughes High School. She was the head of the science department and taught biology, advanced biology, human anatomy and physiology, physical science, and earth science. Due to significant right-knee and low-back injuries, and surgeries for both, Bain used crutches to ambulate at school.

On March 16, 2001, Bain sustained an admittedly compensable injury when she attempted to break up a physical altercation between students. As a result of the incident, Bain had surgeries on her right knee (April 17, 2001) and low back (May 2002), which became the subject of a hearing before an administrative law judge (ALJ) on October 1, 2004. Thereafter, the ALJ issued an opinion finding, among other things, that Bain failed to prove that she suffered a compensable injury to her right knee; that she proved that she suffered a compensable injury to her low back; that she was entitled to temporary-total-disability benefits from March 17, 2001, to at least September 9, 2002 (which was the latest medical evidence submitted by either party at that time[1]); and that she was entitled to continued medical treatment for her compensable injury. This opinion was affirmed and adopted by the Commission on September 1, 2005, which the parties in the instant case stipulated was the law of the case.

The District paid Bain benefits per the Commission's opinion; however, the District controverted medical and temporary-total-disability benefits after September 9, 2002. The record reflects that Bain did not receive the medical treatment recommended by Dr. Bridwell in September 2002, and that Bain did not receive any medical treatment for her compensable injury until May 11, 2006, when she was seen by Dr. Reza Shahim as part of an independent medical evaluation requested by the District. In his report, Dr. Shahim concluded that Bain had not reached maximum medical improvement. Based on this opinion, the parties stipulated that Bain reached the end of her healing period on May 11, 2006. Dr. Shahim also recom-

---

1. On September 9, 2002, Dr. Keith Bridwell recommended a pelvis x-ray, a bone-scan study, a sed rate and CRP study, and an MRI.

mended additional medical treatment, including an MRI, x-rays, and a referral for a pain pump. He issued Bain a ten-percent impairment rating, which was accepted and paid by the District. Appellee Second Injury Fund (Fund), which all parties agreed was responsible for the payment of permanent benefits beyond the payment of the impairment rating, accepted a thirty-percent wage-loss disability. However, Bain contended that she was entitled to additional TTD benefits from September 10, 2002, to May 11, 2006, and permanent-total-disability benefits. The District controverted the request for TTD benefits, and the Fund controverted permanent-total-disability benefits.

At the hearing, Bain testified that since September 9, 2002, she had been in constant pain and had no quality of life. She described complications that she had as a result of the low-back surgery, including a hernia in her abdomen and bladder incontinence. She testified that she took multiple prescription medications for pain, which caused double vision, an inability to concentrate, and drowsiness. She was not able to sleep for eight hours continuously, she was not able to stand or sit for extended periods of time, and she used a walker to walk long distances.

Bain also stated that she had not returned to work since the date of the incident. She said that she neither returned to the District seeking work nor sought work elsewhere. She stated that she was not interested in vocational rehabilitation. The only job she wanted to return to was teaching, and it was her belief that she was unable to perform that job. She stated that she drew retirement-disability and social-security-disability benefits. The ALJ, in his opinion, found that Bain was entitled to TTD from September 10, 2002, to May 11, 2006, and that she was permanently and totally disabled. The Commission affirmed the TTD award, but reversed the permanent-total-disability award, finding that Bain was instead entitled to a thirty-percent wage-loss disability. From this decision, both the District and Bain have appealed.

The standard of review concerning the sufficiency of the evidence in workers' compensation cases is as follows:

On review, this court will affirm if the Commission's decision is supported by substantial evidence. To determine if the decision is supported by substantial evidence, this Court views the evidence in the light most favorable to the Commission's findings and affirms if reasonable minds could have reached the same conclusion. Where a claim is denied because the claimant has failed to show an entitlement to compensation by a preponderance of the evidence, the substantial-evidence standard of review requires the reviewing court to affirm the Commission if its opinion displays a substantial basis for the denial of relief. The injured party bears the burden of proof in establishing entitlement to benefits under the Workers' Compensation Act and must sustain that burden by a preponderance of the evidence. The provisions of the Workers' Compensation Act were formerly construed liberally. However, Act 796 changed the former practice and mandated that the Commission and the courts construe the provisions strictly.

*Dearman v. Deltic Timber Corp.,* 2010 Ark. App. 87, 377 S.W.3d 301, 2010 WL 306993. On direct appeal, the District argues that substantial evidence does not exist to support the Commission's decision that Bain proved that she was entitled to additional TTD benefits.

When an injured employee is totally incapacitated from earning wages and remains in her healing period, she is enti-

tled to temporary-total disability. *Luten v. Xpress Boats & Backtrack Trailers,* 103 Ark. App. 24, 30, 285 S.W.3d 710, 714 (2008). The healing period ends when the employee is as far restored as the permanent nature of her injury will permit; if the underlying condition causing the disability has become stable and if nothing in the way of treatment will improve that condition, the healing period has ended. *Id.,* 285 S.W.3d at 714. Conversely, the healing period has not ended so long as treatment is administered for the healing and alleviation of the condition. *Id.,* 285 S.W.3d at 714. The determination of when the healing period has ended is a factual determination for the Commission and will be affirmed on appeal if supported by substantial evidence. *Id.,* 285 S.W.3d at 714.

The District argues that while Bain was within her healing period from September 2002 to May 2006,[2] she was not totally incapacitated from working. The District points to evidence that Bain made no effort to return to work and that there is nothing in the record to support her contention that she was unable to work during that time. The District cites the testimony of Bain that she was not aware of any medical records stating that she was unable to work, and the District notes that Dr. Bridwell in September 2002, did not take Bain off work or issue any restrictions. Finally, the District relies upon the surveillance video, which illustrated that Bain was very capable of functioning, despite her testimony to the contrary.

We hold that the Commission provided substantial evidence to support its decision to award the additional TTD. The Commission found that Bain suffered a compensable injury to her low back on March 16, 2001; that she was diagnosed with a lumbar strain; that she suffered an approxi-

mate forty-percent anterior subluxation of L5 on S1; that she had surgery on her lumbar spine on May 9, 2002; and that Dr. Bridwell examined her on September 9, 2002 (just four months after the back surgery) and recommended additional medical treatment, some of which were not performed. The Commission also cited the testimony of Bain that she could not work during this time frame. It further relied upon Dr. Shahim's report that Bain had not reached maximum medical improvement as of May 11, 2006, and that she was entitled to a ten-percent[6] impairment rating. Finally, the Commission relied upon the parties' stipulation that Bain's healing period ended May 11, 2006.

While there is no medical record stating that Bain cannot work during this period—and it is her burden to prove this element—we also note that there is no medical record stating that she can work. The lack of medical evidence on this issue is due to the District's decision to controvert Bain's medical treatment after the September 2002 visit with Dr. Bridwell. The District should not be permitted to argue that there is a lack of medical evidence to support Bain's claim when it was the District that cut off that medical treatment. *See Luten,* 103 Ark. App. at 30, 285 S.W.3d at 715 (holding that where employer refused medical treatment, it cannot later rely on that refusal to assert that the employee did not receive treatment to heal and alleviate his condition). We also note that the surveillance video was taken in April and May 2008, which is outside the relevant time frame of this issue. Accordingly, we affirm on direct appeal.

Bain argues on cross-appeal that there is a lack of substantial evidence supporting the Commission's decision that she is not permanently and totally dis-

2. The parties stipulated that Bain's healing period ended May 11, 2006.

abled. The wage-loss factor is the extent to which a compensable injury has affected the claimant's ability to earn a livelihood. *Henson v. Gen. Elec.*, 99 Ark. App. 129, 134, 257 S.W.3d 908, 912 (2007). The Commission is charged with the duty of determining disability based upon a consideration of medical evidence and other matters affecting wage loss, such as the claimant's age, education, and work experience. *Id.*, 257 S.W.3d at 912. Objective and measurable physical or mental findings, which are necessary to support a determination of "physical impairment" or anatomical disability, are not necessary to support a determination of wage-loss disability. *Id.*, 257 S.W.3d at 912. To be entitled to any wage-loss-disability benefit in excess of permanent-physical impairment, a claimant must first prove, by a preponderance of the evidence, that he or she sustained permanent-physical impairment as a result of a compensable injury. *Id.*, 257 S.W.3d at 912. Other matters to be considered are motivation, post-injury income, credibility, demeanor, and a multitude of other factors. *Id.*, 257 S.W.3d at 912–13. The Commission may use its own superior knowledge of industrial demands, limitations, and requirements in conjunction with the evidence to determine wage-loss disability. *Id.*, 257 S.W.3d at 913.

The Commission found that Bain failed to prove that she was permanently and totally disabled but awarded her a thirty-percent wage-loss disability. In so finding, the Commission acknowledged that Bain was fifty-eight years old, holds an undergraduate degree in education, and primarily worked as a teacher. The Commission found that she suffered a compensable back injury, had surgery, and was issued a

ten-percent impairment rating for that injury. The Commission noted that no physician stated that Bain was physically or mentally unable to return to work as a teacher. The Commission specifically found that Bain's testimony that she was currently incapacitated was incredible. Instead, relying upon the surveillance video,[3] the Commission found that she was not physically incapacitated and that she was unmotivated to return to work. We hold that this is substantial evidence supporting the Commission's decision denying Bain permanent and total-disability benefits and affirm on cross-appeal.

Affirmed on direct appeal; affirmed on cross-appeal.

KINARD and GRUBER, JJ., agree.

---

**3.** The surveillance video demonstrated that Bain was able to water her lawn and shrubs by pulling a hose across it and that she was able to spend more than forty-five minutes cleaning out her minivan, which required her to stand, walk, step up and down, bend, lift, and reach.