MIKE MURPHY, Judge
On November 28, 2012, Cindy Shields sustained an injury to her right index finger and left knee while at work for the Arkansas Department of Human Services. She was 49 at the time. A hearing regarding the compensability for the injury to her knee was held on November 21, 2013. At that hearing, the administrative law judge (ALJ) found that Shields had proved by a preponderance of the evidence that her knee injury was compensable. That finding was appealed, and on June 19, 2014, that opinion was affirmed and adopted by the Arkansas Workers' Compensation *212 Commission (Commission). After the ALJ rendered its opinion, but before the Commission adopted it, on December 31, 2013, Shields underwent a total-left-knee-replacement surgery.
A second hearing was held in this case on April 21, 2016. At that hearing, the following issues were litigated: (1) whether Shields was entitled to a total-knee-replacement surgery; (2) whether Shields is entitled to permanent partial-disability benefits in the form of an impairment rating; (3) a determination of Shields's temporary total-disability and permanent partial-disability rates; and (4) whether Shields is entitled to temporary total-disability benefits from December 31, 2013, until August 5, 2015.
Regarding the first issue, the employer argued that the knee-replacement surgery was not necessary for Shields's work-related injury, but instead for her "preexisting longstanding degenerative joint disease." In Shields's reply, she did not dispute that diagnostic testing of her left knee revealed preexisting degenerative changes. The ALJ found, however, that Shields gave credible testimony that her left knee was asymptomatic before her injury, and there were no medical records in evidence that demonstrated any difficulties or complaints regarding her knees before the accident. The ALJ then went on to find that Shields reached maximum medical improvement on August 5, 2015, was entitled to a 50 percent impairment rating to the lower left extremity, that the compensation rates for temporary total- and partial-disability benefits established in a prior order should remain the same, and that Shields was entitled to temporary total disability from December 31, 2013, until August 5, 2015.
The appellants appealed this decision to the Commission, and appellee Death and Permanent Total Disability Trust Fund (Trust Fund) filed a cross-appeal regarding the disability rates. The Trust Fund also filed, at this juncture, motions to supplement and expand the record, which the Commission granted.[1] In its June 6, 2017 decision, the Commission entered a plurality opinion affirming the decision of the ALJ,[2] with the exception of the issue of the average weekly wage, which it changed to $416 for temporary total disability and $312 for permanent partial disability (down from $477 and $368, respectively). The appellants now appeal, alleging the Commission committed error in adopting the portions of the ALJ's opinion that it did. Shields cross-appeals, arguing the Commission erred in modifying *213 her temporary-total and permanent-partial disability rates.
I. Res Judicata
The employer first argues that Shields's claims for total-knee-replacement surgery and corresponding disability benefits are barred by res judicata, because Shields did not present evidence or preserve the issue of surgery and the corresponding disability benefits, or reserve the issues thereof, at the November 21, 2013 hearing. However, despite having made this argument to the Commission, the Commission did not rule on this issue. In order to preserve an issue for appellate review in a workers'-compensation case, it is a party's responsibility to present the issue to the Commission and obtain a ruling. Because the employer failed to obtain any ruling on the argument, we hold that this issue has been waived and that the merits need not be addressed on appeal. See St. Edward Mercy Med. Ctr. v. Chrisman , 2012 Ark. App. 475, at 6-7, 422 S.W.3d 171, 175.
II. Entitlement to Additional Medical Care and Benefits
The employer argues alternatively that the total-knee-replacement surgery was not reasonable and necessary medical treatment for Shields's November 28, 2012 injury.
In appeals involving claims for workers' compensation, the appellate court views the evidence in the light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence. Prock v. Bull Shoals Boat Landing , 2014 Ark. 93, 431 S.W.3d 858. Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. Id. The issue is not whether the appellate court might have reached a different result from the Commission but whether reasonable minds could reach the result found by the Commission. Id. When there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and determine the facts. Wilson v. Smurfit Stone Container , 2009 Ark. App. 800, 373 S.W.3d 347. This court will reverse the Commission's decision only if it is convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. Prock , supra.
Under Arkansas workers'-compensation law, the employer takes the employee as she is found, and an aggravation of a preexisting, noncompensable condition by a compensable injury is, itself, compensable. Oliver v. Guardsmark, Inc. , 68 Ark. App. 24, 3 S.W.3d 336 (1999). Furthermore, the Commission is authorized to accept or reject a medical opinion and is authorized to determine its medical soundness and probative value. Poulan Weed Eater v. Marshall , 79 Ark. App. 129, 84 S.W.3d 878 (2002).
In its order, the ALJ found that Shields credibly testified that she was not having any difficulties with her left before to her November 28, 2012 fall. Shields had testified that before her fall, she had engaged in activities such as hiking and push mowing her one-acre lawn with no trouble. After her fall, her knee became symptomatic including swelling and popping and locking. The ALJ then carefully detailed Shields's medical history.
Shields's first trip to the ER was on the day of her injury. The notes from the treating doctor indicated her knee had "mild soft tissue swelling." After following up with her normal doctor, she was referred to an orthopedic surgeon, Dr. Harp. The assessment at that visit on January 31, 2013, was "1. Post-traumatic patellofemoral *214 syndrome, left knee. 2. [Degenerative Joint Disease ], left knee, medial compartment, with a recent acute on chronic exacerbation." MRI results demonstrated that her arthritic knee condition progressed from mild to severe in a three-month period. They also showed a meniscus tear. Treatment plans began conservatively but to no avail. Knee-replacement surgery was discussed on November 15, 2013.
Before the hearing, the employer retained Dr. Bruce Randolph with UAMS to review Shields's medical records. Dr. Randolph opined that the total-knee-replacement surgery was to treat the longstanding degenerative changes in Shields's knee and that any soft-tissue injury Shields had sustained was healing and did not cause the need for the surgery.
The ALJ concluded, based on the medical records and Shields's testimony, "that whatever damage was done to the claimant's left knee due to her specific incident on November 28, 2012, caused her pre-existing degenerative condition to accelerate which eventually resulted in her need for a total left knee replacement." It found that the surgery was reasonable and necessary medical treatment.
Here, the ALJ provided that it gave less weight to Dr. Randolph's opinions because Dr. Randolph was not an orthopedist. It noted that Shields had credibly testified that she had not experienced knee pain before the November fall and that objective medical evidence demonstrated that her knee was injured in the fall and began degenerating rapidly thereafter. The ALJ's findings are supported by substantial evidence.
III. Healing Period
The employer next argues that substantial evidence does not support the finding that Shields was in a healing period from December 21, 2013, until August 5, 2015.
The healing period is defined as that period for healing of the injury which continues until the employee is as far restored as the permanent character of the injury will permit. Ark. Highway & Transp. Dep't v. McWilliams , 41 Ark. App. 1, 846 S.W.2d 670 (1993). During that period, an employee is entitled to temporary disability when the employee suffers a total or partial incapacity to earn wages. Ark. Highway & Transp. Dep't v. Breshears , 272 Ark. 244, 613 S.W.2d 392 (1981). If the underlying condition causing the disability has become more stable and if nothing further in the way of treatment will improve that condition, the healing period has ended. Mad Butcher, Inc. v. Parker , 4 Ark. App. 124, 628 S.W.2d 582 (1982). Conversely, the healing period has not ended so long as treatment is administered for the healing and alleviation of the condition. McWilliams, supra.
The determination of when the healing period ends is a factual determination to be made by the Commission. Id. Where the sufficiency of the evidence to support the Commission's findings of fact is challenged, this court views the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings. Thurman v. Clarke Indus., Inc. , 45 Ark. App. 87, 90-91, 872 S.W.2d 418, 421 (1994).
The employer argues that the evidence supports a finding that Shields was at maximum medical improvement on October 1, 2014, because the report from Dr. Harp, which the ALJ cited in its opinion, stated that Shields was at maximum medical improvement and able to return to work on that date. The employer argues this directly contradicts the ALJ's findings.
*215 However, in its opinion, the ALJ provided that
[t]he Commission has also been asked to determine the claimant's date of maximum medical improvement. I do note that Dr. Harp indicated maximum medical improvement in two separate medical records, the first time on October 1, 2014. However, in a medical record dated August 5, 2015, where at that time Dr. Harp provides an impairment rating for the claimant, he states: "Therefore, at this point, the patient is at maximum medical improvement. She does have a slight amount of medial lateral instability. To treat this would require increasing the size of the spacer. The patient does not want to undergo this currently so we are truly at maximum medical improvement." After review of the medical records in this matter, specifically considering the October 1, 2014 and August 5, 2015 medical records, I find that the claimant actually reached maximum medical improvement on August 5, 2015.
Here, the ALJ's determination that Shields was in a healing period from December 21, 2013, until August 5, 2015, is supported by medical evidence. The ALJ explained its reasoning for not counting the October 1, 2014 date. Because the ALJ made its factual determination based on evidence from the record, we hold that there is no error on this point.
IV. Permanent Anatomical-Impairment Rating
The employer argues that because the compensable injury was not the major cause of any impairment, the Commission erred in assigning Shields a 50 percent anatomical-impairment-rating award. The employer reasons that the impairment is due to the degenerative condition and not due to the November 28, 2012 injury. It also argues that, alternatively, the permanent-impairment rating is not ripe for consideration because Shields testified that she needs another knee surgery to improve knee function; thus, it is premature for the Commission to make a finding on the amount of impairment Shields has as a result of the outcome of her total-knee-replacement surgery.
"Permanent impairment" has been defined as any permanent functional or anatomical loss remaining after the healing period has ended. Johnson v. Gen. Dynamics , 46 Ark. App. 188, 878 S.W.2d 411 (1994). Any determination of the existence or extent of physical impairment shall be supported by objective and measurable physical or mental findings. Ark. Code Ann. § 11-9-704(c)(1)(B). The Commission is authorized to decide which portions of the medical evidence to credit and to translate this medical evidence into a finding of permanent impairment. Main v. Metals , 2010 Ark. App. 585, at 9, 377 S.W.3d 506, 511.
As noted above, Dr. Harp indicated Shields had reached the end of her healing period and assessed her with an impairment rating in a report dated August 5, 2015. Dr. Harp rated Shields with a 50 percent impairment to her lower left extremity due to her total knee replacement. Dr. Harp's report provided that he believed the surgery had a "fair result." Because we affirm the prior point regarding when Shields reached maximum medical improvement, we necessarily reject the employer's argument that this issue is not now ripe for consideration. Likewise, we hold the impairment rating was supported by substantial evidence. Here, the ALJ relied on medical evidence provided in a report by Dr. Harp and cross-referenced that information with the AMA Guides to the Evaluation of Permanent Impairment to conclude the 50 percent rating is appropriate.
*216 This concludes the issues on direct appeal, all of which are affirmed.
V. Cross Appeal: Modified Disability Rate
On cross appeal, Shields argues that it was inappropriate for the Commission to modify her disability-wage rate when that rate had been set in a prior opinion by the Commission. Shields argues that to do so is in violation of the doctrine of the law of the case. The doctrine of law of the case provides that a decision of an appellate court establishes the law of the case for the trial on remand and for the appellate court itself on subsequent review. Linder v. Linder , 348 Ark. 322, 338, 72 S.W.3d 841, 849 (2002). However, this doctrine is inapplicable because Arkansas Code Annotated section 11-9-713(a)(1) provides that "[e]xcept where a joint petition settlement has been approved, the Workers' Compensation Commission may review any compensation order, award, or decision." The statute goes on to provide that this may be done upon proof of an erroneous wage rate and that, after review, the Commission may modify the compensation previously awarded. Ark. Code Ann. § 11-9-713(a)(2)-(3).
To refresh, Shields and the employer stipulated to the compensation rates at the November 21, 2013 hearing on this claim. The Trust Fund was not yet joined as a party at this time. The Trust Fund was joined as a party by letter from the employer on January 27, 2016. As a general rule, one who becomes a party to an action after the making of a stipulation in a workers'-compensation proceeding is not bound by a prior stipulation. Jackson v. Circle T Express , 49 Ark. App. 94, 896 S.W.2d 602 (1995). The Trust Fund then provided evidence to the Commission that the November 2013 rates were not supported by Shields's wage records. The Commission's findings on Shields's disability rates were made in accordance with statutory authority.
Affirmed on direct appeal; affirmed on cross-appeal.
Gladwin and Brown, JJ., agree.

The Trust Fund entered this litigation on January 27, 2016, by a letter from the employer, roughly three months before the April hearing. It deferred to the outcome of the litigation on all issues except for the average weekly wage and benefits rate. The Trust Fund contended that Shields's wage records do not support the stipulation for compensation rates of $477 for temporary-total disability and $368 for permanent partial-disability. Since the Trust Fund's entry, Shields has consistently argued that the Trust Fund may not now challenge the average weekly wage and benefit rates, because those matters were previously stipulated and adopted in a prior order, and doing so is barred by res-judicata principles. The Trust Fund's position is that it was not a party at the time of the stipulation, it is not bound by the prior stipulation, and that the Commission has statutory authority to modify compensation awards upon proof of erroneous wage rates under Arkansas Code Annotated section 11-9-713 (Repl. 2012).

Under Arkansas law, the Commission is permitted to adopt the ALJ's opinion. SSI, Inc. v. Cates , 2009 Ark. App. 763, 350 S.W.3d 421. In so doing, the Commission makes the ALJ's findings and conclusions the findings and conclusions of the Commission. Id. For purposes of our review, we consider both the ALJ's opinion and the Commission's majority opinion. Id.