ARKANSAS METHODIST HOSPITAL *v.* Martha
ADAMS and Second Injury Fund

CA 92-1062                                    858 S.W.2d 125

Court of Appeals of Arkansas
Division I
Opinion delivered July 7, 1993

*Blackman Law Firm*, by: *Bill H. Walmsley* and *Keith Blackman*, for appellant.

*Terry Pence*, for appellees.

JOHN E. JENNINGS, Chief Judge. The claimant in this workers' compensation case, Martha Adams, sustained an admittedly compensable injury September 25, 1989, while working for Arkansas Methodist Hospital. She was diagnosed as having chronic lumbosacral strain with associated degenerative lumbar disc disease. In 1970, Ms. Adams had herniated a lumbar disc while employed with Emerson Electric. As a result of that injury, a laminectomy was performed.

Dr. Ray Tyrer, a neurosurgeon, eventually gave Ms. Adams an anatomical rating of 7% to the body as a whole resulting from the September 1989 injury. This rating was accepted by the hospital.

On August 29, 1991, a hearing was held before the administrative law judge and the parties stipulated that Ms. Adams had sustained a 15% permanent partial disability as a result of the injury with Emerson in 1970. The ALJ found that the claimant had sustained an additional 18% wage loss disability as a result of the September 1989 injury and held that the Second Injury Fund

was responsible for paying the wage loss disability.

On de novo review, the full Commission also found that Ms. Adams had sustained an 18% wage loss disability but held that the Second Injury Fund had no liability. The hospital appeals the Commission's order, contending (1) that the Commission erred in finding that the claimant had sustained an 18% wage loss disability, and (2) that the Commission erred in absolving the Second Injury Fund from liability. We affirm on the first issue but reverse and remand on the second.

The hospital's first contention is based on the provisions of Ark. Code Ann. § 11-9-704(c) (Supp. 1991). The statute provides that "Any determination of the existence or extent of physical impairment shall be supported by objective and measurable physical or mental findings." Arkansas Code Annotated section 11-9-522(b) (1987) provides, in part:

> In considering claims for permanent partial disability benefits in excess of the employee's percentage of permanent physical impairment, the Commission may take into account, in addition to the percentage of permanent physical impairment, such factors as the employee's age, education, work experience, and other matters reasonably expected to affect his future earning capacity.

We think it is clear that the reference to "physical impairment" in Ark. Code Ann. § 11-9-704(c)(1) refers to a determination of anatomical disability as opposed to a loss of a wage earning capacity under § 11-9-522(b). This was at least implied by our opinion in *Reeder* v. *Rheem Mfg. Co.*, 38 Ark. App. 248, 832 S.W.2d 505 (1992).

In the case at bar the appellant hospital had already accepted the anatomical rating of 7% given by Dr. Tyrer. In determining Ms. Adams' loss in wage earning capacity the Commission correctly considered "the claimant's age, education, work experience, and all other factors reasonably expected to affect her future earning capacity." "Objective and measurable physical or mental findings" are necessary to support a determination of "physical impairment." Ark. Code Ann. § 11-9-704(c)(1) (Supp. 1991). They are not necessary to support a determination of wage loss disability.

As to the hospital's second contention, the Commission held that the Second Injury Fund had no liability under the circumstances. The Commission said:

> The second issue on appeal involves liability for payment of those benefits. The Administrative Law Judge found that the Second Injury Fund was liable for those benefits; we disagree. The requirements for finding Second Injury Fund liability were set forth by the Arkansas Supreme Court in *Mid-State Construction Co.* v. *Second Injury Fund*, 295 Ark. 1, 746 S.W.2d 539 (1988). Those requirements are that (1) claimant suffer a compensable injury at his present place of employment; (2) that prior to the injury claimant have a pre-existing disability or impairment; and (3) that the disability or impairment must combine with the recent compensable injury to produce the current disability status. We find insufficient evidence that this claimant had a pre-existing disability or impairment. First, it is important to note that the court has distinguished between "disability" and "impairment". *Weaver* v. *Tyson Foods*, 31 Ark. App. 147, 790 S.W.2d 442 (1990). "Impairment" applies to conditions which are not work-related, and "disability" is defined as incapacity because of injury, to earn the wages which the employee was receiving at the time of the injury. A.C.A. § 11-9-102(5); *Weaver, supra, Danny McWilliams* v. *Arkansas Highway & Transportation Dept.*, Full Commission opinion filed December 6, 1991 (D801186). Here, there is no question but that the claimant's prior injury was work-related. Therefore, in order for the second requirement in *Mid-State* to be met, there must be evidence that the claimant suffered a loss in wage earning capacity as a result of that injury. *Weaver, supra.* We find insufficient evidence that the claimant suffered any loss in wage earning capacity as a result of the prior back injury in 1970. Although the claimant underwent surgery and received a permanent physical impairment rating in an amount equal to 15% the body as a whole as a result of that injury, no medical evidence has been offered indicating that any physical limitations were placed upon claimant as a result of that injury. Further, claimant testified that she

could not remember any physical limitations being placed upon her. Also, claimant testified that following the injury and surgery, she was able to return to work for Emerson Electric performing the same job. Although claimant subsequently terminated her employment with Emerson Electric, she did so for personal reasons. In addition, it is also significant to note that claimant testified that she had very good results following the surgery in 1970 which allowed her to engage in any activities which she desired.

Given this evidence, as well as a lack of credible evidence to the contrary, we find that claimant did not suffer a loss in wage earning capacity as a result of her 1970 injury. For us to find that claimant suffered a loss in wage earning capacity we would have to speculate that such a loss occurred. Speculation and conjecture, no matter how plausible, are not to be substituted for credible evidence by this Commission. *Dena Construction Co.* v. *Herndon*, 264 Ark. 791, 575 S.W.2d 155 (1979). Having found insufficient evidence that the claimant suffered a loss in wage earning capacity as a result of the injury in 1970, the claimant did not suffer from a pre-existing disability or impairment and the second requirement for Second Injury Fund liability has not been met. Therefore, we find that the Second Injury Fund is not liable for benefits in this case.

We cannot agree with the Commission's conclusion. The applicable statute, Ark. Code Ann. § 11-9-525(b)(3) (1987), provides, in pertinent part:

(3) If any employee who has a permanent partial disability or impairment, whether from compensable injury or otherwise, receives a subsequent compensable injury resulting in additional permanent partial disability or impairment so that the degree or percentage of disability or impairment caused by the combined disabilities or impairments is greater than that which would have resulted from the last injury, considered alone and of itself, and if the employee is entitled to receive compensation on the basis of combined disabilities or impairments, then the employer at the time of the last injury shall be liable only for the degree or percentage of disability or impairment

which would have resulted from the last injury had there been no preexisting disability or impairment.

In the case at bar the record contains the order of the administrative law judge approving, on behalf of the Commission, a 1971 joint petition between Ms. Adams and Emerson Electric Company. The order recites: "Based upon the evidence in this case, it is established that the claimant has suffered a 15% permanent partial disability to the body as a whole. . . ." That finding, on behalf of the Commission, necessarily carries with it a determination of loss of earning capacity at the time of the entry of the order. Once the Commission has made a determination of the existence of permanent partial disability, whether as a result of a hearing after the issues have been controverted or on a hearing to approve a joint petition, we do not think that the issue is subject to reexamination in the context of the Second Injury Fund statute. In the language of § 11-9-525(b)(3), Ms. Adams was an employee who had "a permanent partial disability" prior to her 1989 "subsequent compensable injury."

We conclude that the Commission erred in finding that the second requirement of *Mid-State Construction* was not met. Because the Commission did not rule on the third requirement of *Mid-State*, i.e., whether the disability combined with the recent compensable injury to produce the current disability status, we remand the case to the Commission to make that determination.

Affirmed in Part; Reversed and Remanded in Part.

COOPER and ROGERS, JJ., agree.