James R. HENSON *v.* GENERAL ELECTRIC,
Electric Insurance, Second Injury Fund

CA 06-1356                                    257 S.W.3d 908

Court of Appeals of Arkansas
Opinion delivered May 30, 2007

*McDaniel & Wells, P.A.*, by: *Phillip Wells*, for appellant.

*David L. Pake*, for appellee Second Injury Fund.

Robert J. Gladwin, Judge. Appellant James R. Henson appeals the August 31, 2006 decision of the Arkansas

Workers' Compensation Commission (Commission) finding that he was entitled to wage-loss-disability benefits of thirty-five percent. The Commission also gave appellee Second Injury Fund (Fund) a dollar-for-dollar credit for both long-term-disability benefits and disability-retirement benefits from their obligation to pay permanent-disability benefits. Further, the Commission ordered the Fund to reimburse the employer, appellee General Electric (GE), for any overpayment of temporary-total-disability benefits up to a maximum of the Fund's liability to pay appellant wage-loss-disability benefits. On appeal, appellant contends that he should be awarded total and permanent-disability benefits, or at a minimum, sixty percent wage-loss-disability benefits. Also, he claims that appellees should not receive a credit for disability-retirement benefits from their obligation to pay permanent-disability benefits. We reverse and remand in part, and affirm in part.

Appellant is fifty-four years old and has a high school education. He began working for GE in 1970 as a utility person, and he later moved into the maintenance department prior to becoming a machine operator. Appellant also obtained vocational training in hydraulics through GE. Appellant sustained a compensable injury on June 12, 2001. At that time, he was earning $19.00 per hour. His total wages exceeded $50,000 per year because he worked considerable overtime. Appellant sustained injuries and surgeries prior to the June 12, 2001 injury. He underwent his first back surgery on December 12, 1995, and he had a second back surgery on April 15, 1996. Further, appellant sustained a knee injury that required surgery on or about June 13, 2002. Due to his compensable back injury on June 12, 2001, appellant underwent a third back surgery on August 15, 2001, followed by an extensive fusion surgery at the L4-L5 level on January 10, 2002. He has not been gainfully employed since the fusion surgery. He takes a number of prescription medications, including Neurontin, Metradose, and Lexapro. He testified that he cannot sit for more than ten to fifteen minutes at a time. He has to move from standing to sitting to reclining in order to relieve his pain. He has a difficult time sleeping and sometimes has to roll out of bed onto the floor in order to get up in the morning. He claims that he is unable to lift anything, and he cannot sit or stand without pain becoming an issue. GE provided appellant with job-placement assistance through Rehabilitation Management, Inc. Ms. Heather Naylor, a vocational-rehabilitation consultant, found job opportunities for the appellant; however, appellant did not obtain a job as a result.

Appellant claimed before the Administrative Law Judge (ALJ) that he was permanently-totally disabled or, alternatively, that he had sustained wage-loss disability in excess of the thirty-five percent to the body as a whole, which had been accepted by the Fund. GE claimed that any wage-loss disability over and above the twelve-percent permanent-anatomical-impairment rating was the responsibility of the Fund. GE requested reimbursement from the Fund for any payments made beyond its obligation to pay the twelve- percent permanent-anatomical-impairment rating. It further maintained that any and all wage loss was the responsibility of the Fund, including, but not limited to, the thirty-five percent accepted by the Fund. The Fund maintained that it was not responsible for reimbursement of any overpayment of temporary-total disability as its liability was limited to wage-loss-disability benefits only. The Fund conceded that it had controverted any wage-loss disability in excess of thirty-five percent for purposes of attorney's fees.

By order filed July 27, 2005, the ALJ made the following findings of fact and conclusions of law:

1. The Arkansas Workers' Compensation Commission has jurisdiction over this claim.

2. The stipulations agreed to by the parties are hereby accepted as fact.

3. The claimant has failed to prove, by a preponderance of the credible evidence, that he is permanently totally disabled.

4. The claimant has shown, by a preponderance of the credible evidence, that he has sustained a wage-loss disability of sixty percent to the body as a whole which was caused by the combined disabilities or impairments, together with the June 12, 2001 compensable injury.

5. Respondent # 2 [the Fund] is responsible for all wage-loss disability, specifically, the sixty percent wage-loss disability awarded herein.

6. Respondent # 1 [GE] is not entitled to any reimbursement for overpayment of permanent impairment benefits. Respondent # 1 [GE] did not obtain a final impairment rating from the primary treating physician until April 28, 2004, and

is estopped from asserting a credit for any alleged overpayment. Furthermore, respondents have failed to prove that any alleged overpayments were considered advanced payments of compensation within the meaning of Ark. Code Ann. § 11-9-807.

7. Respondent # 2 [the Fund] is not entitled to a credit or offset pursuant to Ark. Code Ann. § 11-9-411.

8. Respondent # 2 [the Fund] has accepted a thirty-five percent wage-loss disability in this claim. Respondent # 2 [the Fund] has controverted all wage-loss in excess of the thirty-five percent acknowledged.

9. Respondent # 1 [GE] has paid all appropriate benefits for which it is liable, including continued, reasonably necessary medical treatment and is not obligated for payment of any attorney's fees.

By order of August 31, 2006, the Commission reversed in part and modified in part the ALJ's decision. The Commission found that the evidence demonstrated that appellant was capable of working a job that pays $12.35 an hour. Accordingly, the Commission found that appellant's loss-of-earning capacity was thirty-five percent. Further, the Commission determined that appellant did not have a financial incentive to work. The Commission found that GE was entitled to be reimbursed by the Fund the $37,136 that GE overpaid the appellant in compensation. Further, appellant was not required to reimburse GE for the overpayment he received. Finally, the Commission found that the Fund should be given a dollar-for-dollar credit for the long-term-disability benefits and disability-retirement benefits received by the appellant.

The Fund filed a motion for the Commission to reconsider its decision that GE was entitled to be reimbursed $37,136 by the Fund for GE's overpayment to appellant. After considering the motion, the Commission, by order of September 29, 2006, found that its finding should be modified, stating:

> Our original finding with respect to [GE's] entitlement to reimbursement is correct. In addition, our original finding that [the Fund] is entitled to a credit for benefits claimant received pursuant to § 411 is also correct. Due to the circumstances of [GE's] oversight in overpayment and failure to claim the § 411 credit on their own behalf, the facts in this claim dictate [the Fund] should not be required to reimburse [GE] beyond their own liability in this claim.

> The claimant has already received more money than he is entitled and a true correction would actually require the claimant to reimburse the respondents, which is against longstanding public policy.

The Commission ordered that GE was entitled to reimbursement; however, the Fund was not required to pay this reimbursement beyond the extent of its actual liability to appellant, which was $11,223.12. Appellant filed his notice of appeal on September 11, 2006, and thereafter, the parties filed a joint stipulation with this court agreeing that no party intended to appeal the September 29, 2006, opinion of the Commission. This stipulation rendered GE's brief to this court moot.

In appeals involving claims for workers' compensation, this court views the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence. *See Kimbell v. Ass'n of Rehab Indus.*, 366 Ark. 297, 235 S.W.3d 499 (2006). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* The issue is not whether the appellate court might have reached a different result from the Commission; if reasonable minds could reach the result found by the Commission, the appellate court must affirm the decision. *Id.* We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Dorris v. Townsends of Ark., Inc.*, 93 Ark. App. 208, 218 S.W.3d 351 (2005).

Questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. *Patterson v. Ark. Dep't of Health*, 343 Ark. 255, 33 S.W.3d 151 (2000). When there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and to determine the true facts. *Id.* The Commission is not required to believe the testimony of the claimant or any other witness, but may accept and translate into findings of fact only those portions of the testimony that it deems worthy of belief. *Id.* The Commission has the authority to accept or reject medical opinions, and its resolution of the medical evidence has the force and effect of a jury verdict. *Poulan Weed Eater v. Marshall*, 79 Ark. App. 129, 84 S.W.3d 878 (2002). Thus, we are foreclosed from determining the credibility and weight to

be accorded to each witness's testimony. *Arbaugh v. A G Processing, Inc.*, 360 Ark. 491, 202 S.W.3d. 519 (2005). As our law currently stands, the Commission hears workers' compensation claims de novo on the basis before the ALJ pursuant to Ark. Code Ann. § 11-9-704(c)(2), and this court has stated that we defer to the Commission's authority to disregard the testimony of any witness, even a claimant, as not credible. *See Bray v. Int'l Wire Group*, 95 Ark. App. 206, 235 S.W.3d 548 (2006).

*Wage loss*

The wage-loss factor is the extent to which a compensable injury has affected the claimant's ability to earn a livelihood. *Emerson Elec. v. Gaston*, 75 Ark. App. 232, 58 S.W.3d 848 (2001). The Commission is charged with the duty of determining disability based upon a consideration of medical evidence and other matters affecting wage loss, such as the claimant's age, education, and work experience. *Eckhardt v. Willis Shaw Exp., Inc.*, 62 Ark. App. 224, 970 S.W.2d 316 (1998). Objective and measurable physical or mental findings, which are necessary to support a determination of "physical impairment" or anatomical disability, are not necessary to support a determination of wage-loss disability. *Arkansas Methodist Hosp. v. Adams*, 43 Ark. App. 1, 858 S.W.2d 125 (1993). To be entitled to any wage-loss-disability benefit in excess of permanent-physical impairment, a claimant must first prove, by a preponderance of the evidence, that he or she sustained permanent-physical impairment as a result of a compensable injury. *Wal-Mart Stores, Inc. v. Connell*, 340 Ark. 475, 10 S.W.3d 882 (2000). Other matters to be considered are motivation, post-injury income, credibility, demeanor, and a multitude of other factors. *Glass v. Edens*, 233 Ark. 786, 346 S.W.2d 685 (1961); *Curry v. Franklin Elec.*, 32 Ark. App. 168, 798 S.W.2d 130 (1990); *City of Fayetteville v. Guess*, 10 Ark. App. 313, 663 S.W.2d 946 (1984). The Commission may use its own superior knowledge of industrial demands, limitations, and requirements in conjunction with the evidence to determine wage-loss disability. *Oller v. Champion Parts Rebuilders Inc.*, 5 Ark. App. 307, 635 S.W.2d 276 (1982).

Appellant contends that the Commission placed great weight on a November 4, 2004 report from Heather Naylor of Rehab Management that indicated appellant was capable of performing light-duty work and that a job was available that paid $12.35 per hour. Based on this evidence, the Commission found that the appellant's loss of earning capacity was thirty-five percent.

Appellant argues that none of the jobs listed in the reports and letters from Heather Naylor, which were submitted as evidence, paid $12.35 per hour. A review of the record submitted on appeal reveals that the November 4, 2004, report referred to in the Commission's decision and relied upon to a great extent was not included. When reviewing decisions from the Commission, we review the evidence and all reasonable inferences deducible there-from in the light most favorable to the Commission's finding and affirm if supported by substantial evidence. *Welch's Laundry & Cleaners v. Clark*, 38 Ark. App. 223, 832 S.W.2d 283 (1992). Because the relied-upon report is missing from the record herein, this issue is reversed and remanded to the Commission for reconsideration because there is no basis upon which to make this factual statement.

### *Credit*

Appellant claims that as a result of his disability, he received two disability payments in addition to his workers' compensation benefits. The first was $150 per month for long-term disability and the second was $876 per month for disability-retirement benefits. The Commission allowed the Fund to receive a dollar-for-dollar credit for these benefits against any workers' compensation payments, pursuant to Ark. Code Ann. § 11-9-411(a) (Repl. 2002), which provides as follows:

> Any benefits payable to an injured worker under this chapter shall be reduced in an amount equal to, dollar-for-dollar, the amount of benefits the injured worker has previously received for the same medical services or period of disability, whether those benefits were paid under a group health care service plan of whatever form or nature, a group disability policy, a group loss of income policy, a group accident, health, or accident and health policy, a self-insured employee health or welfare benefit plan, or a group hospital or medical service contract.

Appellant concedes that his long-term-disability benefits fit within the definition of a group-disability policy under Ark. Code Ann. § 11-9-411(a). He argues that the language of the statute does not allow for a dollar-for-dollar offset for disability-retirement benefits. He points out that the statute does not include the term "disability-retirement benefits." Appellant contends that if the legislature intended to consider an offset of disability-retirement

benefits, those would have been included in the statute. He cites *Kildow v. Baldwin Piano & Organ*, 333 Ark. 335, 969 S.W.2d 190 (1998), for the proposition that workers' compensation statutes are to be construed strictly. He argues that disability-retirement benefits are benefits paid primarily based on the eligibility of an employee to retire based on years of service in addition to being disabled, and since those benefits do not appear in Ark. Code Ann. § 11-9-411, they are not subject to credit or offset by the Fund.

Appellees argue that the Commission noted that the ALJ instructed appellant to disclose the identity of the entity that was paying his disability benefits. Thus, appellees claim that the instruction carries with it the reasonable presumption that appellant has the burden of proving that disability-retirement benefits are based on years of service. The Commission found the opposite, and reasonable minds could come to the conclusion that an injured worker would not be eligible for disability retirement unless he was physically unable to perform the job he was doing for that employer. Appellees claim that a worker's physical condition, and not the amount of time the worker was employed, would be of consequence. We agree.

The Commission stated in its opinion of August 31, 2006:

> Long-term disability benefits and the disability retirement benefits which the claimant receives are the types of benefits which subsection 411 is intended to address. The only type of benefit which respondent no. 2 [Fund] pays is the weekly benefit for wage loss disability. The claimant is receiving two types of disability payments from other sources. A disability "retirement" is not the same thing as a regular one. An employee becomes eligible for a disability retirement by virtue of injury, not by meeting the minimum number of years for a normal retirement. As such, it would meet the definition of a "welfare benefit plan . . . of whatever form or nature . . ." [as stated in the statute].

We note that the interpretation given a statute by the agency charged with its administration is highly persuasive, and while not conclusive, it should not be overturned unless it is clearly wrong. *Death & Perm. Dis. Trust Fund v. Anderson*, 83 Ark. App. 230, 125 S.W.3d 819 (2003).

Appellees further claim that Ark. Code Ann. § 11-9-411 is clear. First, appellees argue that it was the intent of the legislature to include all types of benefits paid for disability because

the term "any" is a term of expansion rather than a term of limitation. Second, the statute was meant to prevent a claimant from receiving a double recovery for the same period of disability. Third, the legislature included benefits "received by" the claimant, rather than "received from" a certain source. Appellees claim that it is therefore clear that if a claimant receives any type of disability benefit during a particular time period of disability, the legislature does not want the claimant to also receive workers' compensation benefits for that same time period. We agree and hold that the Commission did not err in finding that Ark. Code Ann. § 11-9-411 applies to retirement-disability benefits, as the overriding purpose of § 11-9-411 is to prevent a double recovery by a claimant for the same period of disability.

Reversed and remanded in part, and affirmed in part.

HART and ROBBINS, JJ., agree.