2010 Ark. App. 414

**Sandra HIXON, Appellant**

v.

**BAPTIST HEALTH and Death & Permanent Total Disability Fund, Appellees.**

**No. CA 09–1394.**

Court of Appeals of Arkansas.

May 12, 2010.

Gregory Ross Giles, Moore & Giles, L.L.P., Texarkana, for appellant.

Gail K. Ponder, Little Rock, for appellees.

JOHN B. ROBBINS, Judge.

This is a workers' compensation appeal in which the claimant, Sandra Hixon, was denied her claim for permanent total disability (PTD) benefits related to a compensable back injury she sustained while at work for Baptist Health. The Commission found that she was entitled to 25 percent wage-loss disability benefits, over and above her 13 percent permanent partial disability rating. It affirmed and adopted the administrative law judge's finding that she was entitled to additional medical treatment for her back pain; it reversed the law judge's finding that she was enti-

tled to 50 percent wage loss. In this appeal, Hixon contends that she is entitled to PTD or alternatively entitled to greater wage loss than 25 percent. We affirm the finding that Hixon is not entitled to PTD, but we reverse and remand the finding that her wage loss is no greater than 25 percent. Substantial evidence supports the former finding but not the latter.

In reviewing decisions from the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings, and we affirm if the decision is supported by substantial evidence. *See Whitlach v. Southland Land & Dev.*, 84 Ark. App. 399, 141 S.W.3d 916 (2004). Substantial evidence exists if reasonable minds could reach the Commission's conclusion. *Id.* When a claim is denied because the claimant has failed to show an entitlement to compensation by a preponderance of the evidence, the substantial-evidence standard of review requires us to affirm if the Commission's opinion displays a substantial basis for the denial of relief. *Id.* A claimant is entitled to know the factual basis upon which a claim is denied. *See McCoy v. Preston Logging*, 21 Ark.App. 68, 74, 728 S.W.2d 520, 523 (1987); *Wright v. Am. Transp.*, 18 Ark.App. 18, 21, 709 S.W.2d 107, 109 (1986). The Commission has the duty of weighing medical evidence as it does any other evidence, and the resolution of conflicting evidence is a question of fact for the Commission. *Public Employee Claims Div. v. Tiner*, 37 Ark. App. 23, 822 S.W.2d 400 (1992). The Commission may not arbitrarily disregard medical evidence or the testimony of any witness. *Hill v. Baptist Med. Ctr.*, 74 Ark. App. 250, 48 S.W.3d 544 (2001).

Permanent total disability means inability, because of a compensable injury, to earn any meaningful wages in the same or other employment. Ark.Code Ann. § 11–9–519(e) (Repl.2002). The wage-loss factor is the extent to which a compensable injury has affected the claimant's livelihood. *Logan County v. McDonald*, 90 Ark.App. 409, 206 S.W.3d 258 (2005). In considering claims for permanent partial disability benefits in excess of the employee's percentage of permanent physical impairment, the Commission may take into account, in addition to the percentage of permanent physical impairment, such factors as the employee's age, education, work experience, and other matters reasonably expected to affect her future earning capacity. Ark.Code Ann. § 11–9–522(b)(1) (Repl.2002).

Hixon testified that she was 51 years old with a high school education. She worked in various employment capacities but the majority of her working experience was as an emergency medical technician or paramedic. Hixon began work for Baptist Health in 1990, and she trained to become a paramedic. She sustained the compensable low-back injury on July 27, 2004, while she tried to move an obese patient. She suffered low-back, hip, and leg pain. She was treated conservatively, including injections that eased her symptoms. She continued to work light duty, then back on the ambulance, where she hurt her back again moving another large patient in 2005. She again underwent steroid injections to ease her pain.

A January 2006 functional capacity evaluation deemed Hixon capable of light work. Hixon continued to work in a light-duty capacity, thirty-six hours per week as a dispatcher making $8.13 per hour. In contrast, she was earning $10.40 per hour for substantially more hours per week as a paramedic when she was first injured.

Because she continued to suffer pain, numbness, and tingling, she sought more treatment. Ultimately she was granted a

change of physician to Dr. Hart. She tried stabilizing exercises, physical therapy, and injections. These provided some relief, but not long-lasting relief.

Dr. Burson performed surgery on her back in September 2007. The procedure was an L4–S1 posterior lumbar interbody fusion. The parties stipulated that she reached maximum medical improvement on May 27, 2008, and that she was entitled to a 13 percent rating for the condition of her back after surgical intervention. Dr. Burson encouraged her to return to Dr. Hart for pain management.

The issues in this case began to arise at this point. Hixon experienced a setback post-surgery. She suffered increasing pain and wanted more medical care to give her some relief from constant back pain. Dr. Hart proposed retrodiscal transforaminal injections, but Baptist Health did not approve. Instead, Baptist Health sent her back to Dr. Jansen, her family physician. Dr. Jansen agreed that Hixon might benefit from what Dr. Hart could provide in the way of pain management.

Dr. Jansen opined in October 2008 that Hixon had significant physical restrictions including: alternating sitting and standing every ten minutes, less than two to four hours of sitting per day, no lifting or carrying over eleven pounds, limited repetitive use of her right foot, no stooping/crouching/climbing/kneeling, and notable moderate pain. In that same report, Dr. Jansen opined that Hixon was capable of repetitive tasks such as simple grasping, pushing, pulling, and fine manipulation. He concluded that it would be difficult for Hixon to work full time.

A vocational consultant, Edie Nichols, testified that she began to help Hixon in November 2008 with work possibilities, focusing on sedentary jobs with some exploration of light-duty jobs. Nichols focused on an approximate 50–mile radius of Hixon's home in Donaldson, Arkansas, a town between Arkadelphia and Malvern. Another functional capacity evaluation conducted in December 2008 showed that Hixon demonstrated reliable effort and could do sedentary work. Nichols noted her transferrable skills, suggesting sample jobs like cashier, dispatcher, information clerk, receptionist, data entry clerk, assembler, and document preparer. The wages for those jobs ranged from well below to well above her pre-injury wages. Of those jobs, some were for full-time work and some were for part-time work. Baptist Hospital no longer offered her a light-duty job.

Hixon explained that one or two days per week she could not get out of bed. She said she had back spasms when she tried any household chores, and she never got more than four hours of sleep on "a good night." Hixon said she used motorized carts to do shopping, and on the witness stand, she lifted herself from the seat from time to time to relieve back pressure. Hixon said she was on narcotic pain medication that she took every four to five hours, and an antidepressant that also addressed pain. Hixon said that she was taking a computer course one night per week, that she worked on her resume with Nichols, that she pursued many job leads that Nichols gave her, that she had two interviews, but that she had not been offered any jobs. Hixon had experience in supplies and billing, supervising, and dispatching. Hixon was approved for social security disability, and she did not believe she could work full time even in a sedentary job.

The Commission deemed Hixon to be credible, relatively young, but unable to perform her former job of full-time paramedic. The Commission found that Hixon was cooperative with Nichols, and she had valuable training and work experience. It

found that Hixon's use of pain medication did not prevent her from the return to work at her present capacity, and it noted that no doctor specifically declared her permanently totally disabled. The Commission, therefore, deemed Hixon to be 25 percent wage disabled over her impairment rating and not permanently totally disabled. The Commission affirmed the law judge's determination that Hixon was entitled to further medical treatment by Dr. Hart, which was supported by two other doctors who saw Hixon.

Hixon contends on appeal that there is no job that she can acquire with her limitations, skills, and location. Hixon also contends that the Commission arbitrarily disregarded Dr. Jansen's full opinion that noted the significant limits to her ability to work a full day, even in a sedentary capacity. Lastly, Hixon contends that the Commission arbitrarily disregarded her tremendous drop in annual income from before her injury (approximately $40,000) to post injury (dropping to approximately $9,800), which was documented by Hixon's W–2 forms through 2007.

The Commission may use its superior knowledge of industrial demands, limitations, and requirements in conjunction with the evidence to determine wage-loss disability. *Henson v. General Elec.*, 99 Ark.App. 129, 257 S.W.3d 908 (2007). The determination of both permanent total disability and wage-loss are fact intensive. *Id.* Both Hixon and Baptist Health argue in their respective briefs that there are various appellate cases where high and low wage-loss awards have been given, likening this set of facts to the favorable cases from their perspective. We have no hesitation in holding that substantial evidence supports the denial of PTD. No doubt Hixon suffers substantial limitations, but there is evidence of record that she has transferrable work skills, motivation, and the ability to do some sedentary work. The closer question is whether substantial evidence supports the award of only 25 percent wage-loss disability.

While we acknowledge that there is no exact formula for determining wage loss, this record simply does not support a finding that Hixon's wage-loss disability was no more than 25 percent. The Commission considered the medical evidence, Hixon's credible testimony, and the vocational opportunities. But, it did not reference the undisputed proof of her prior wages and the tremendous drop post-injury, at that time zero, even with her earnestly trying to find employment. Nor did the Commission connect the wage loss to range of wages paid for jobs that Hixon might be able to hold. The Commission mentioned that Hixon was not able to perform her prior paramedic job, but nothing more on that subject. We reverse and remand for further proceedings consistent with this opinion, taking into account Hixon's pre- and post-injury wages and wages for available work and making findings on whether Hixon is capable of full-time employment. *R.C. Landscaping v. Jones*, 2010 Ark. App. 304, 374 S.W.3d 761; *Taggart v. Mid–America Packaging*, 2009 Ark. App. 335, 308 S.W.3d 643.

Affirmed in part; reversed and remanded in part.

KINARD and MARSHALL, JJ., agree.