

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV–16–173

| | |
|---|---|
| JASON BOWMASTER<br>APPELLANT | Opinion Delivered November 30, 2016 |
| V. | APPEAL FROM THE ARKANSAS<br>WORKERS' COMPENSATION<br>COMMISSION [NO. G202759] |
| CITY OF JACKSONVILLE,<br>ARKANSAS, ARKANSAS MUNICIPAL<br>LEAGUE, and DEATH & PERMANENT<br>TOTAL DISABILITY TRUST FUND<br>APPELLEES | AFFIRMED IN PART; REVERSED<br>AND REMANDED IN PART |

**PHILLIP T. WHITEAKER, Judge**

Appellant Jason Bowmaster appeals a decision of the Arkansas Workers' Compensation Commission ("Commission"), which concluded that he was not entitled to a permanent impairment rating for dysphasia or for an alleged traumatic-brain or closed-head injury; that he was entitled to a wage-loss disability rating of only 50 percent; and that the appellees (collectively referred to as "the City") were entitled to an offset for disability-retirement benefits paid to him by the Arkansas Local Police and Fire Retirement System ("LOPFI benefits"). After considering the record before us, we reverse and remand as to the Commission's determination of Bowmaster's impairment and wage-loss ratings and affirm as to the offset of LOPFI benefits.



I. *Impairment and Wage-Loss Ratings*

The Commission, in its de novo review, reversed the decision of the Administrative Law Judge (ALJ) and found that Bowmaster had failed to prove a brain injury or dysphasia and set his impairment rating at 22 percent (2 percent for right femur, 3 percent for right knee, 8 percent for left knee, 6 percent for left shoulder, and 3 percent for pelvis). The Commission further found that Bowmaster was entitled to a wage-loss benefit of 50 percent. Bowmaster filed a timely notice of appeal from the Commission's opinion, which is now before this court. Bowmaster contends that the Commission exceeded its authority when it found that he had not sustained a brain injury or dysphasia. He argues that only the degree of impairment, not the existence of an injury, was in dispute. We agree. A review of the facts and the procedural history is important to an understanding of our conclusion.

On March 19, 2012, Bowmaster suffered multiple compensable injuries when he was intentionally run over by a van while working as a firefighter for the City of Jacksonville. The City initially accepted compensability and paid medical and temporary total-disability benefits[1] to Bowmaster. Bowmaster and the City were not able to reach an agreement on the issues of permanent partial disability, permanent and total disability or wage loss, attorney's fees, and offset of benefits. These issues proceeded to a hearing before the ALJ.

The ALJ issued two prehearing orders relating to the issues to be litigated between Bowmaster and the City. In the first order, the ALJ listed the following stipulations of the parties:

---

[1] Temporary total-disability benefits were paid until the end of the healing period on September 25, 2013.

SLIP OPINION

The parties stipulated to an employee-employer-carrier relationship on March 19, 2012, at which time the claimant sustained multiple compensable injuries at a compensable rate of $546.00/$410.00. Medical expenses, total temporary disability benefits until the end of the healing period. (September 25, 2013) and anatomical impairment totaling 22% (14% brain, 7% knee, 2% shoulder) have been accepted.

The order listed the issues to be litigated as "additional anatomical impairment (for the hip and brain); permanent total disability or wage loss; attorney's fees; offset of benefits, Ark. Code Ann. § 11-9-411, and contempt." In the second order, the ALJ once again designated the issues to be litigated as "anatomical impairment (hip and brain); wage loss, controversions; attorney's fees; fund liability; and contempt; offset of LOPFI benefits." The order directed the parties to advise the Commission, in writing, of any corrections or additions within ten days. Neither party did so.

Bowmaster and the City proceeded to a hearing on the issues set forth in the two prehearing orders. At the beginning of the hearing, the ALJ noted that the issues to be resolved at the hearing were "anatomical impairment of the hip and brain, wage loss, attorney's fees, Fund liability, contempt and an offset of benefits." Counsel for the City agreed with the ALJ's assessment. Concerning the anatomical impairment ratings, counsel for Bowmaster, however, asked for some clarification of the issues, and the following colloquy occurred:

> COUNSEL FOR BOWMASTER: No, Your Honor, I just wanted to make sure that we were clear on what ratings we are fighting over, I guess.
>
> ALJ: Okay.
>
> COUNSEL FOR BOWMASTER: The differences I see is the left shoulder with the 6% from Rosenzweig, a 29% for the head injury. And then, let's see, [the City] accepted 2% to the left shoulder, *14% to the head*.

SLIP OPINION

ALJ:    Do you want to respond?

COUNSEL FOR THE CITY:  Your Honor, I think the second paragraph of the contentions set forth [our] contentions *with respect to anatomical impairment.*

(Emphasis added.)

After the hearing, the ALJ found that, based on the evidence before it, Bowmaster was entitled to a 49 percent impairment rating to the body as a whole, which included an impairment of 29 percent for a closed-head injury and 10 percent for dysphasia. The ALJ further found that, while Bowmaster had failed to prove that he was permanently and totally disabled, he had proved wage loss of 70 percent. The City appealed the ALJ's decision as it pertained to "the claim of anatomical impairment" and "the extent of wage loss disability." Bowmaster cross-appealed the ALJ's decision that he was not permanently and totally disabled.

From the record before us, the City accepted an anatomical impairment rating totaling 22 percent.  Within this impairment rating, the City specifically accepted 14 percent as relating to the brain.  The ALJ then listed the 22 percent rating, including the 14 percent as relating to the brain, as a stipulation of parties. At no point in its multiple prehearing questionnaires did the City ever expressly dispute Bowmaster's claim that he had suffered a brain injury or dysphasia.  Rather, the prehearing responses submitted by the City and the uncontested issues listed in the prehearing orders filed by the ALJ indicate that the only disagreement between the parties was the extent of those injuries and the additional anatomical rating for permanent impairment, if any, that should be given.  The ALJ stated in

its remarks prior to the hearing and then in its written opinion that the issues to be resolved related to whether Bowmaster had sustained additional anatomical impairment. At no time did the City voice its disagreement with the scope of the issues to be presented at the hearing or affirmatively represent to the ALJ that it was disputing the existence of the injury itself. It is abundantly clear that the only issue before the Commission with regard to Bowmaster's brain injury and dysphasia was the amount of additional impairment, if any, to which he was entitled.

Arkansas Code Annotated section 11-9-711(b)(4)(A) (Repl. 2012) gives this court the authority to reverse the Commission's decision if the Commission acts without or in excess of its powers. The Commission, by deciding an issue not in dispute and not properly before it, acted in excess of its powers. Accordingly, we reverse and remand for the Commission to assess what, if any, additional impairment rating should be assigned to those injuries. Additionally, because the Commission's wage-loss calculations were based, in part, on its improper determination of Bowmaster's permanent impairment rating, we remand to allow the Commission to reexamine its findings based on a proper impairment-rating calculation.

## II. *Offset of Benefits*

Both the ALJ and the Commission found for the City on the issue of whether it was entitled to an offset for wage-loss benefits from LOPFI. The City's entitlement to an offset is a question of statutory interpretation and application. The question of the correct interpretation and application of an Arkansas statute is a question of law, which we decide de novo. *St. Edward Mercy Med. Ctr. v. Howard*, 2012 Ark. App. 673, 424 S.W.3d 881. It is for

5

this court to decide what a statute means. *Id.* In deciding what a statute means, the interpretation of a statute by the agency charged with its execution is highly persuasive, and, while not binding on this court, will not be overturned unless it is clearly wrong. *Id.* When we construe the workers' compensation statutes, we must strictly construe them. *Id.* Strict construction is narrow construction and requires that nothing be taken as intended that is not clearly expressed. *Id.* The doctrine of strict construction requires this court to use the plain meaning of the language employed. *Id.*

Bowmaster claims that the LOPFI benefit plan does not fall within the group of entities listed in Arkansas Code Annotated section 11-9-411 and is therefore not governed by its offset provisions. Arkansas Code Annotated section 11-9-411(a)(1) states that

> [a]ny benefits payable to an injured worker under this chapter shall be reduced in an amount equal to, dollar-for-dollar, the amount of benefits the injured worker has previously received for the same medical services or period of disability, whether those benefits were paid under a group health care service plan of whatever form or nature, a group disability policy, a group loss of income policy, a group accident, health, or accident and health policy, a self-insured employee health or welfare benefit plan, or a group hospital or medical service contract.

The overriding purpose of this section is to prevent a double recovery. *Henson v. General Electric*, 99 Ark. App. 129, 257 S.W.3d 908 (2007). The list of entities subsequently addressed by the statute in that subsection in no way limits the type of benefits for which the offset is available. Rather, the provision indicates a legislative intent to prevent such a narrow interpretation of the types of benefits to which the offset pertains. The only exception to this general rule is found in subsection (a)(2) of the statute, which is not applicable here.

SLIP OPINION

Moreover, our court has previously found that benefits payable to an employee through LOPFI are subject to the offset provisions of the statute, *see Brigman v. City of W. Memphis*, 2013 Ark. App. 66, and our legislature has not felt the need to amend the statute to provide otherwise. "The General Assembly is presumed to be familiar with the appellate courts' interpretation of its statutes, and if it disagrees with those interpretations, it can amend the statutes. Without such amendments, however, the appellate courts' interpretations of the statutes remain the law." *Miller v. Enders*, 2013 Ark. 23, at 12, 425 S.W.3d 723, 730 (citing *McCutchen v. City of Fort Smith*, 2012 Ark. 452, at 19, 425 S.W.3d 671, 683 (internal citations omitted)).

Based on the foregoing, we cannot find that the Commission's interpretation of the statute as it relates to Bowmaster's LOPFI benefits was clearly wrong. Therefore, we affirm on this issue.

Affirmed in part; reversed and remanded in part.

ABRAMSON and KINARD, JJ., agree.

*Martin Law Firm*, by: *Aaron L. Martin*, for appellant.

*Katie Bodenhamer*, for appellees.